Argued May 15, reversed June 26, motion to retax costs granted September 11, 1917.

## MAXSON v. ASHLAND IRON WORKS.*

(166 Pac. 37; 167 Pac. 271.)

Evidence—Replevin—Value of Property—Presumption—Burden of Proof—Statute.

1. In an action to recover possession of sawmill machinery exchanged for lumber by plaintiff with defendant's mortgagor under an agreement that the machinery was worth $500, the presumption of continuance, prescribed by Section 799, subdivision 33, L. O. L., afforded *prima facie* evidence of the value of the property at the time

*On rights of seller of chattel, retaining title thereto or a lien thereon, as against existing mortgagees of the realty to which it is affixed by the owner, see note in 37 L. R. A. (N. S.) 119.

On effect of agreement to prevent fixtures from becoming part of realty as to prior mortgages, see note in 19 L. R. A. 444.

REPORTER.

of the trial, imposing on defendant the burden of disproving such value, and, though plaintiff did not give testimony as to the value of the machinery, nonsuit was properly refused.

### Evidence—Parol Evidence Affecting Writing—Statute.

2. Under Section 713, L. O. L., providing that where the terms of an agreement have been reduced to writing, there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, with two exceptions, in an action to recover possession of sawmill machinery by plaintiff who exchanged it for lumber with defendant's mortgagor, evidence proving the intent of plaintiff and defendant's mortgagor, in respect to the writing between them, the execution of which plaintiff claimed resulted from the mistake of the scrivener was inadmissible.

### Sales—Conditional Sale—Retention of Possession.

3. Where plaintiff agreed to sell sawmill machinery to defendant's mortgagor, and the latter agreed to give lumber in payment, it being agreed that plaintiff should retain "possession" of the machinery until it was fully paid for in lumber, the written contract, embodying such terms, did not evidence a conditional sale.

### Sales—Conditional Sale—Recordation of Contract—Statute.

4. By Section 7414, L. O. L., it is unnecessary to the validity of a conditional sale that the contract be recorded, unless the property, title to which has been reserved, has been so attached to realty as to become a fixture.

### Fixtures—Removal.

5. Personal property is not so attached to realty as to become a fixture if it can be removed without material injury to the property or to the freehold.

### Fixtures—Realty.

6. In an action to recover sawmill machinery by plaintiff, who sold it to defendant's mortgagor, defendant's title being derived from foreclosure of a chattel mortgage, no question could arise as to fixtures; defendant's right to the machinery being unconnected with any realty.

> [As to when and against whom fixtures may retain character of personal property, see note in 84 **Am. St. Rep.** 877.]

### Sales—Action Against Mortgagee of Conditional Vendee—Remittitur.

7. Where verdict and judgment were rendered for plaintiff, in his action of replevin, that he was the owner of the demanded machinery, and entitled to immediate possession or a recovery of $500 as its value, the trial court could not require plaintiff to remit part of the amount on the ground that he had received such part of the purchase price of the machinery conditionally sold to defendant's mortgagor.

### Action—Law and Equity.

8. Under a statute recognizing a clear distinction between actions at law and suits in equity, an award of a remainder due on a conditional contract could not be determined in replevin.

Costs—On Appeal—Reversal.

9.  Although both parties appeal, where the reversal of the judgment operated to defendant's advantage, it was entitled to costs and disbursements.

From Jackson: Frank M. Calkins, Judge.

Department 2.  Statement by Mr. Justice Moore.

This is an action by F. H. Maxson against the Ashland Iron Works, a corporation, to recover the possession of 1 planer, 1 resaw, 1 cut-off saw, 1 rip-saw, 30 feet of shafting, belting, and pulleys, or the sum of $500 as the alleged value thereof in case possession cannot be secured.  The complaint is in the usual form and alleges *inter alia* that after a demand therefor by the plaintiff the defendant refused to surrender the possession of any of the property, but unlawfully detains it in Jackson County, Oregon.

The answer denied the material averments of the complaint, and for a further defense alleged in effect that, on January 12, 1915, all the property so described was owned by and in the possession of T. H. Johnson, in whose sawmill it was then installed and attached as a fixture; that on the date mentioned Johnson and his wife executed to the defendant a chattel mortgage of such machinery, which mortgage was duly recorded nine days after it was executed; that on July 12, 1915, such mortgage then being due and unpaid, the defendant caused it to be foreclosed in the manner prescribed, and after giving due notice purchased such property at a public sale thereof, and the defendant then became, ever since had been, and then was the owner and entitled to the possession of such machinery.

The reply put in issue the allegations of new matter in the answer, and the cause having been tried resulted in a verdict and judgment to the effect that the plain-

tiff was the owner of the demanded property and entitled to the immediate possession thereof, the value of which was assessed by the jury at $500. Within the time limited the court

"ordered that unless plaintiff should remit $300 of the value in said judgment on or before December 15, 1915, a new trial would be granted for the reason that plaintiff testified he had received $300 on his contract and the court should have instructed the jury that the value should not exceed $200 in the verdict."

The order not having been complied with the verdict and judgment were set aside and a new trial granted, from which latter judgment each party separately appeals.                                    Reversed.

For appellant there was a brief over the names of Mr. F. J. Newman and Mr. T. W. Miles, with an oral argument by Mr. Newman.

For respondent there was a brief and an oral argument by Mr. W. E. Crews.

Mr. Justice Moore delivered the opinion of the court.

A copy of all the evidence given at the trial is made a part of the bill of exceptions herein. From such transcript it appears that an agreement was concluded as follows:

"Made in Duplicate.
"Exchange Contract.

"This contract, made and entered into this 28th day of July, 1914, by and between F. H. Maxson of the County of Jackson and State of Oregon, party of the first part, and T. H. Johnson of the County of Jackson and State of Oregon, party of the second part, witnesseth: That the said party of the first part agrees

to sell to the party of the second part the following described personal property, to-wit: One planer, one resaw, one cut-off saw, one rip saw, thirty foot of shafting, belting, and pulleys. The said above property to be valued at $500. The above described property to be free and clear of all incumbrances. The said party of the second part hereby agrees to give in payment for the above described property dimension lumber at $9.00 a thousand feet and inch lumber at $10.00 a thousand feet to the amount of $500.00. The above lumber to be free and clear of all incumbrance. It is further agreed by and between the parties hereto that any balance due either of the parties shall be paid in cash. It is also further agreed by and between the parties that the party of the first part is to retain possession of the above described machinery until fully paid for in lumber.

"Witness our hands this 28th day of July, 1914.

"F. H. MAXSON.
"T. H. JOHNSON.

"In presence of
"E. ADAMSON.

"State of Oregon,
  County of Jackson,—ss.

"Subscribed and sworn to before me this 28th day of July, 1914.

"E. ADAMSON,
"(Notarial seal.)    Notary Public for Oregon."

This agreement was never recorded. Mr. Maxson assisted in removing the machinery about eight miles to Johnson's sawmill, where it was installed.

The evidence also shows that Johnson purchased from the defendant sawmill machinery of the value of $925, and he and his wife, on January 12, 1915, executed to the corporation a promissory note for that sum, $325 of which was payable June 1st of that year, $300 three months thereafter, and the remainder June

1, 1916, with interest at seven per cent per annum. The note contained a clause to the effect that default in the payment of any installment should immediately render the whole sum due and payable at the option of the holder. In order to secure the payment of the note the makers thereof at the same time executed to the defendant herein a chattel mortgage of all the machinery in the sawmill, including that which had been delivered by Maxson. The mortgage was recorded January 21, 1915.

Without the consent of either party hereto Johnson sold the resaw to persons who took it to Talent, Oregon, where it was installed in a mill. By consideration of the federal court of Oregon a decree of bankruptcy was rendered against Johnson, who thereupon departed from the state. Pursuant to written notice an officer took possession of the machinery in Johnson's sawmill in order to foreclose the chattel mortgage, no part of which had been paid and the first installment having matured. This action was then commenced, after notice had been served upon the defendant to surrender possession of the machinery Maxson had delivered, which demand was not complied with, and the defendant gave an undertaking and caused the property to be sold under the foreclosure, becoming the purchaser of the machinery.

The plaintiff as a witness in his own behalf testified in referring to the machinery:

"Q. What was the value of the property?
"A. Five hundred dollars. * *
"Q. About what portion of the lumber had you received?
"A. Well, I think I had somewheres about 30,000 feet that I received. * *

"Q. The amount of the lumber you received would be of what value according to this contract?

"A. Well, it would amount to a little over $300; somewhere along there."

1. The foregoing statement of facts is deemed sufficient to explain the legal principles involved. Considering first the appeal of the defendant, its counsel contend that an error was committed in denying a motion for a judgment of nonsuit, interposed when the plaintiff had introduced his evidence and rested, on the ground that no testimony had been given tending to show the value of the demanded machinery at the time of the trial. The testimony given by Maxson to the effect that the machinery was of the value of $500 evidently related to the estimated worth of the property at the time he concluded the contract with Johnson. The statute requires that if the plaintiff, as in this instance, has not obtained possession of the property, the jury shall assess its value if they return a verdict in his favor: Section 153, L. O. L. In denying the motion referred to the court invoked the disputable presumption, "that a thing once proved to exist continues as long as is usual with things of that nature" (Section 799, subd. 33, L. O. L.), and held that since it appeared the machinery was of the value of $500 on July 28, 1914, when the exchange contract was made, it necessarily followed from the deduction which the law expressly directs to be made from particular facts that such worth remained the same October 26, 1915, when this cause was tried. It has been held that the presumption relied upon does not apply in cases of money which a party may previously have had in his possession: *Hammer* v. *Downing,* 41 Or. 234 (66 Pac. 916) ; *State ex rel.* v. *Gutridge,* 46 Or. 215 (80 Pac. 98) ; *State* v. *Rider,* 78 Or. 318 (145 Pac. 1056, 152 Pac.

497); *Weigar* v. *Steen,* 81 Or. 72 (158 Pac. 280). In case of sawmill machinery, however, of the kind here described, the presumption of continuance notwithstanding its use is reasonably to be inferred; and this being so the conclusion which the law prescribes afforded *prima facie* evidence of the worth of the property at the time of the trial, thereby imposing upon the defendant the burden of disproving such value. No error was committed in refusing to grant a judgment of nonsuit.

The plaintiff, over objection and exception, was permitted to introduce testimony tending to show that in preparing the contract for an exchange of the machinery for lumber the word "possession" was inadvertently used in the clause for the term "title," and it is insisted by defendant's counsel that an error was committed in this respect. Mr. Maxson, referring to the man who prepared the agreement testified as follows:

"I told Mr. Adamson that I wanted a contract drawed that I could own the machinery until it was paid for."

This sworn declaration is corroborated by Mr. Adamson, who testified:

"When I drew this contract I understood that the title was to remain in Mr. Maxson until the lumber was delivered, that he was to get so many thousand feet of lumber for this machinery, and that the title was to remain in him until fully paid for."

The testimony of these witnesses seems to be substantiated by the phrase "agrees to sell," as used in the exchange agreement.

"Where the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and, therefore, there can be, between the parties and their representatives or

successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings; (2) where the validity of the agreement is the fact in dispute'': Section 713, L. O. L.

2, 3. The defendant must necessarily claim as a representative or successor in interest of the plaintiff in respect to the demanded machinery. In such case evidence was inadmissible to prove the intent of the contracting parties in respect to the writing, the execution of which, it is asserted, resulted from the mistake of the scrivener: *Pacific Biscuit Co.* v. *Dugger,* 42 Or. 513 (70 Pac. 523); *Smith* v. *Farmers & Merchants' Nat. Bank,* 57 Or. 82 (110 Pac. 410); *Muir* v. *Morris,* 80 Or. 378 (154 Pac. 117, 157 Pac. 785). An error was committed in this respect. The word "title" cannot be substituted for the term "possession," as used in the writing, and hence the exchange contract does not evidence a conditional sale: *Singer Mfg. Co.* v. *Graham,* 8 Or. 17 (34 Am. Rep. 572); *Rosendorf* v. *Baker,* 8 Or. 240; *Schneider* v. *Lee,* 33 Or. 578 (17 Pac. 269); *Christenson* v. *Nelson,* 38 Or. 473 (63 Pac. 648); *Herring-Marvin Co.* v. *Smith,* 43 Or. 315 (72 Pac. 704, 73 Pac. 340); *McDaniel* v. *Chiaramonte,* 61 Or. 403 (122 Pac. 33); *Francis* v. *Bohart,* 76 Or. 1 (143 Pac. 920, 147 Pac. 955, L. R. A. 1916A, 922).

4-6. It is maintained by defendant's counsel that an error was committed in refusing to direct a verdict in favor of their client when the cause was submitted. It is argued that the machinery delivered by Maxson to Johnson was installed in the latter's mill, thereby becoming a fixture, and as the plaintiff did not cause his contract to be recorded, and the evidence shows the defendant secured its chattel mortgage without notice

or knowledge of the pre-existing agreement, the jury should have been instructed as requested. It is unnecessary to the validity of a conditional sale that the contract therefor should be recorded unless the property, the title to which has been reserved, has been so attached to any real estate as to become a fixture thereto: Section 7414, L. O. L. Personal property is not so attached if it can be removed without material injury to the articles themselves or to the freehold: *Henkle* v. *Dillon,* 15 Or. 610 (17 Pac. 148); *Landigan* v. *Mayer,* 32 Or. 245 (51 Pac. 649, 67 Am. St. Rep. 521); *Hershberger* v. *Johnson,* 37 Or. 109 (60 Pac. 838); *Washburn* v. *Inter-Mountain Min. Co.,* 56 Or. 578 (109 Pac. 382, Ann. Cas. 1912C, 357). The testimony offered at the trial does not show that the machinery delivered by the plaintiff could not have been removed from Johnson's sawmill without inflicting the degree of injury adverted to; and hence no error was committed as alleged. Aside from this, as the defendant's title is derived from a foreclosure of a chattel mortgage, no question can arise as to fixtures since the right to the machinery is not connected with any real estate.

Considering the plaintiff's appeal it is contended that an error was committed in setting aside the verdict and judgment and granting a new trial. The question thus presented is whether or not such a mistake of law was perpetrated at the trial as would have necessitated a reversal of the original judgment if an appeal had been taken, thereby authorizing the court to act as complained of: *De Vall* v. *De Vall,* 60 Or. 493 (118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291); *Taylor* v. *Taylor,* 61 Or. 257 (121 Pac. 431, 964); *Smith & Bros. Typewriter Co.* v. *Mc-*

*George,* 72 Or. 523 (143 Pac. 905); *Frederick & Nelson*
v. *Bard,* 74 Or. 457 (145 Pac. 669); *Delovage* v. *Old
Oregon Creamery Co.,* 76 Or. 430 (147 Pac. 392, 149
Pac. 317); *Pullen* v. *Eugene,* 77 Or. 320 (146 Pac. 822,
147 Pac. 768, 1191, 151 Pac. 474). Could the court,
therefore, in an action of replevin try the cause as a
suit in equity, consider the conditional sale as equiva-
lent to a chattel mortgage, and regard the plaintiff's
attempt to recover the machinery as an effort on his
part to obtain and hold possession of the property as
security for $200, the remainder due him? It is gen-
erally held that where personal property is sold on
credit and the title to the goods is retained by the
vendor until the price is paid he may upon a breach
of the conditions treat the sale either as absolute and
sue for the consideration agreed to be paid or he may
regard the sale as canceled and recover the property:
6 Am. & Eng. Ency. Law (2 ed.), 480; 35 Cyc. 696;
*Sanders* v. *Newton,* 140 Ala. 335 (1 Ann. Cas. 267, 37
South. 340); *American Soda Fountain Co.* v. *Gerrer's
Bakery,* 14 Okl. 258 (78 Pac. 115, 2 Ann. Cas. 318);
*American Process Co.* v. *Florida White Pressed Brick
Co.,* 56 Fla. 116 (47 South. 942, 16 Ann. Cas. 1054).

Another choice of remedies is recognized in some
states of the Union where the rule prevails that a
vendor, without rescinding the agreement, may resume
possession of the goods, hold them subject to the con-
tract, and enforce its performance against the vendee,
who, upon payment of the purchase price, is entitled
to a restoration of the property: 1 Mechem, Sales,
§ 615. Thus as illustrating a choice of the latter
remedy it was held in *Hamilton* v. *Highlands,* 144 N. C.
279 (56 S. E. 929, 12 Ann. Cas. 876), that under a con-
tract of conditional sale a default in the payment of a

part of the installments, and the continued possession of the property beyond the specified term, did not give the vendor the right to recover the remainder of the consideration and to retake possession of the goods, but that the measure of the relief was the sale of the property by the court and the payment to the vendor out of the proceeds of the remainder of the purchase price due him, together with interest, costs, etc., deducting the payments made and giving the surplus to the vendor, or in case of a deficiency to render judgment therefor against him. This remedy regards the vendor as holding the legal title to the property in trust for the vendee, whose equitable interest in the goods grows *pari passu* and is measured by the extent of the purchase price which has been paid. As a corollary, deducible from the principle of the latter remedy stated, the authority of the vendee to assign his interest in the property is recognized, subject, however, to the paramount right of the vendor, and permits the assignee, upon payment of the remainder of the purchase price, to succeed to the legal title freed from the reservation. Such procedure, however, is serviceable only in a court of equity or possibly where by statute an equitable defense is permitted to be interposed to a complaint in a law action, which practice was not available in Oregon when this cause was tried, nor until May 22, 1917, when the act amending Section 390, L. O. L., went into effect, apparently sanctioning such procedure: Laws 1917, Chap. 95.

In *Thirlby* v. *Rainbow,* 93 Mich. 164 (53 N. W. 159), a headnote reads:

"The question of the right of a vendee of personal property, the title to which was retained in the vendor until the payment of the purchase price, with the right to reduce it to possession in case of non-payment, to

recover the amount paid thereon in excess of what the vendor had a right to retain, cannot be tried in a replevin suit brought by the vendor after default in payment and refusal to surrender the property on demand.''

To the same purport is the case of *Ryan* v. *Wayson,* 108 Mich. 519 (66 N. W. 370), where it was held that upon the failure of a vendee to comply with the terms of a conditional sale the vendor was entitled to the possession of the property, although there was no express provision to that effect, and that in an action of replevin by the vendor under such a contract a judgment in favor of the vendee for the excess of the value of the goods over the unpaid purchase price was unauthorized, since the vendee had no special interest in the goods even if entitled to treat the contract as rescinded, but at most he had only a personal claim against the vendor.

Whether the defendant after filing an answer to the complaint herein showing no defense existed at law could have interposed a cross-bill in equity and set up an equitable interest in the demanded machinery by reason of being subrogated to Johnson's right is not involved for no such proceedings were invoked. When the vendor has regained or is legally entitled to the possession of goods delivered under a contract of conditional sale, since the vendee's claim to recover any of the payments that he may have made on account of the purchase price of the property is only personal (*Ryan* v. *Wayson,* 108 Mich. 519 (66 N. W. 370), we do not wish to be understood as intimating that an equitable defense is now available in an action of this kind, even under the amendment of Section 390, L. O. L.

7. A verdict and judgment having been rendered for the plaintiff that he was the owner of the demanded

machinery and entitled to the immediate possession thereof, or to a recovery of $500 as its value, the court could not in an action of this kind legally require the plaintiff to remit any part of the sum so stated; but having done so the latter judgment is reversed and for the error first mentioned a new trial is ordered.

REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE BURNETT concur.

MR. JUSTICE MCCAMANT taking no part in the consideration of this case.

———

Costs retaxed September 11, 1917.

MOTION TO RETAX COSTS.

(167 Pac. 271.)

On motion to retax costs. Motion sustained and costs allowed in favor of defendant.

*Mr. W. E. Crews*, for the motion.

*Mr. F. J. Newman* and *Mr. T. W. Miles, contra.*

Department 2. MR. JUSTICE MOORE delivered the opinion of the court.

8, 9. This is a motion to retax costs. Though the plaintiff and the defendant appealed the judgment was reversed on the ground that an error had been committed in receiving testimony given by the plaintiff tending to vary the terms of the exchange contract by showing that the word "possession" as there employed was inadvertently used for the term "title," which the plaintiff was to retain until he had received the full

consideration for the machinery that he sold.  As the defendant is the successor in interest of the plaintiff in respect to the demanded machinery the express language of the writing could not be changed in an action of this kind.  What is said in the opinion relating to the demand for a remission of $300, in failing to comply with which the plaintiff's judgment was set aside and a new trial ordered, was intended to show that under a statute like ours, which recognizes a clear distinction between actions at law and suits in equity, an award of the remainder due on a conditional contract could not be determined in a replevin action. The reversal of the judgment operated to the advantage of the defendant, and it is entitled to the costs and disbursements which it has incurred.  The mandate will, therefore, be recalled and corrected as here indicated.                    MOTION TO RETAX COSTS ALLOWED. ·

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE BURNETT concur.

MR. JUSTICE MCCAMANT taking no part in the consideration of this case.