Argued November 16; affirmed November 29, 1932; rehearing
denied January 10, 1933

## DUNN *v.* ASSETS REALIZATION CO. ET AL.
(16 P. (2d) 370, 17 P. (2d) 1118)

*B. G. Skulason,* of Portland, for appellant.

*John W. Kaste,* of Portland, for respondent Assets Realization Company.

*Waldemar Seton, Jr.,* of Portland, for respondent Pacific Northwest Public Service Company.

BELT, J. Holladay Court, an apartment house in the city of Portland, was built by one C. W. Tyle early in the year 1926. On February 27th of the same year, the builder purchased from the Portland Electric Power Company twenty-one electric ranges to be installed in these apartments. The total purchase price of the ranges was $1,664.25, of which $164.25 was paid at the time of purchase, the remainder being carried on a conditional sales contract, title remaining in the vendor until such time as the contract should have been fully paid. This conditional sales contract was never recorded.

On July 14, 1926, the Brice Mortgage Company advanced to Mr. Tyle the sum of $8,000, taking as security a note and second mortgage on the apartment house, including appurtenances. On May 27, 1927, plaintiff's testate, J. C. Dunn, purchased this note and mortgage and took an assignment of the mortgage. This note was made payable a year after date, with

interest payable quarterly. Upon failure, early in 1927, to pay the quarterly interest, the Brice Mortgage Company had declared the entire amount due and payable. On June 3, 1927, Dunn commenced foreclosure proceedings. On April 30, 1928, a decree was entered and on June 11, 1928, Mr. Dunn bought the property at the judicial sale which was confirmed on June 23, 1928. Mr. Dunn took possession of the apartment house on July 1, 1928.

In the meantime, the Assets Realization Company had succeeded to the interest of Mr. Tyle and had entered into a new conditional sales contract with the Portland Electric Power Company covering the remainder of the payments due, amounting to $635.25. This they agreed to pay at the rate of $75 per month, beginning January 1, 1928, with interest at six per cent from December 1, 1927.

On the 9th of July, 1929, the Assets Realization Company made demand upon the plaintiff for payment of $1,239.25, agreeing upon receipt of such payment to assign and transfer to plaintiff the said ranges and the conditional sales contract covering their purchase.

The Assets Realization Company having defaulted in payment, leaving a balance due of $425 with interest, the Portland Electric Power Company made demand upon plaintiff for payment of said principal sum and interest. Both demands were refused.

After this suit was commenced, Mr. Dunn died testate and his executrix was substituted as party plaintiff. The Pacific Northwest Public Service Company is successor to the Portland Electric Power Company.

Plaintiff asked that the court decree the ranges to be a part of the realty but, if held to be personalty, that their value be determined and the amount to be paid to each of the defendants ascertained.

Also involved in this suit with reference to the Assets Realization Company were the wall beds, screens, awnings, and four "roll about" beds. The trial court held that, with the exception of the "roll about" beds, these were a part of the realty, but that the beds and ranges in controversy were personalty. It was determined that there was due to the Pacific Northwest Public Service Company the sum of $513.50, and to the Assets Realization Company the sum of $862.25.

Plaintiff appeals, assigning as error the decision of the lower court that the ranges and four "roll about" beds are personalty and contending that, even if such were the case, the value placed upon them is greatly in excess of their actual worth. Plaintiff also asserts that the claims of defendants being for an alleged conversion of the property, and unliquidated, interest cannot be allowed from the date of conversion.

■ There is no serious controversy as to the "roll about" beds. Clearly these beds are personal property and not subject to the lien of the mortgage. The real question presented is whether the electric ranges, upon installation, became a part of the realty.

■ There is no definite, hard and fast rule by means of which the legal character of fixtures may be ascertained. The three tests formulated in the early case of *Teaff v. Hewitt,* 1 Ohio St. 511 (59 Am. Dec. 634), and used as criteria by this court in that of *Blake-McFall Co. v. Wilson,* 98 Or. 626 (193 P. 902, 14 A. L. R. 1275), are: (1) Annexation; (2) adaptation; and (3) intention. These, used as a general guide to be modified by the particular circumstances in each case, constitute a fairly accurate method. The tendency found in modern decisions is to stress the third test—that of intention—making it controlling where there is doubt as to the effect of

the two others. Nevertheless, courts vary widely in arriving at a definition of this term. It is one which may be characterized as belonging in the "twilight zone" between realty and personalty and taking on the character of either according to the circumstances governing the particular case under consideration.

■■ Applying the rule to the instant case, we consider first the matter of annexation. The evidence plainly shows that the ranges were connected by means of a plug in much the same manner that an electric lamp is connected. It is stated that they were also attached by means of a vent pipe from oven outlet to flue. It could not be argued that the freehold or the ranges would be physically damaged by detaching this cord and disconnecting the pipe. An ordinary coal or wood range is connected to the realty by means of a stovepipe, yet we have found no authority which goes to the extent of holding a coal range to be a part of the realty. If this type of annexation be considered sufficient to transform personal property into real, we should be constrained to hold that a radio or floor lamp may be similarly classified. Some courts hold that the test of annexation relates to impairment of the enjoyment or usefulness of the freehold as well as to physical damage sustained. The fact that a chattel may be useful is not decisive; however, it must be essential to be brought within the rule. We cannot say, either as a matter of law or fact, that an electric range is essential to the enjoyment of the freehold.

This brings us, then, to the second test—that of adaptation. Appellant contends that the ranges were placed in the apartment house by the builder in order to complete the house for lease, that the plans of the house provided a place for the ranges, and that they were to be used as a part of the standard equipment

of such apartment house. We are of the opinion that this point is not well taken. No doubt, the ranges were adapted to the purpose and use of the apartment house; but the evidence shows that they were equally well suited to any other or to a private residence. It was not necessary to alter the construction to receive them and the ranges were not peculiarly adapted to this particular building. Their removal would not alter the primary purpose and use of the realty. Like any other article of furniture, they added to the attractiveness of the apartments, but were not a necessary adjunct.

■ Passing then to the question of intention, we are confronted by a more difficult situation. The matter of intention is not governed by any secret plans or mental reservations. The intention as disclosed by the conduct of the parties, their relations, and the nature of their transactions, is what controls. Viewing the record in its entirety, we are not convinced that the electric ranges at the time of their installation were intended to become a part of the realty. The seller reserved title and could remove them upon default in payment.

■■ The authorities are in conflict, but we think the better rule—and the one which is supported by the weight of authority—is that, when the removal of such articles as electric ranges will not materially injure the premises, a seller or buyer under a conditional sales contract, even though not recorded, may assert his right as against a prior mortgage on the realty. The term "appurtenance" in the mortgage does not include personal property. See cases in exhaustive note 73 A. L. R. 755. *Madfes v. Beverly Development Corporation,* 251 N. Y. 12 (166 N. E. 787), is squarely in point. The reasoning of the dissenting opinion does not appeal. Neither do we approve *Knoxville Gas Co. v. Kirby & Sons,* 161 Tenn. 490 (32 S. W. (2d) 1054).

Personal property is not so attached to real property as to become a "fixture" within the meaning of section 64-201, Oregon Code 1930, if it can be removed without material injury to the articles themselves or to the freehold: *Maxson v. Ashland Iron Works,* 85 Or. 345 (166 P. 37, 167 P. 271).

It does not appear from the decree that the trial court took into consideration the question of interest so far as affecting the rights of the plaintiff mortgagee. Since recovery against the plaintiff was based on the theory of conversion of the property in question, it is clear that no interest should be charged. Error will not be presumed. The amount found against the plaintiff would indicate that the court took into consideration an approximate ten per cent yearly depreciation in the electric ranges until date of conversion. Furthermore, no objection was taken in the lower court against the charge of interest, if, in fact, any was made. The value of the ranges as fixed by the court will not be disturbed.

The decree is affirmed.

BEAN, C. J., CAMPBELL and KELLY, JJ., concur.

---

Petition for rehearing denied January 10, 1933

ON PETITION FOR REHEARING
(17 P. (2d) 1118)

BELT, J. Appellant requests a rehearing of this cause upon the ground that, while the statement of facts set forth in the court's decision indicates that appellant's testate was in the position of a subsequent

mortgagee, the rule is later stated by the court as relating to a prior mortgagee.

We are of the opinion that where the nature of the article so clearly classifies it as personal property, the question of priority is not controlling: 11 R. C. L. 1074. The inadvertent use of the term ''prior mortgage'' has no real bearing under the facts of this case.

The petition for rehearing is denied.