Argued September 18; affirmed October 2, 1934

MILLER ET AL. *v.* McCARTHY ET AL.

(36 P. (2d) 346)

*William W. Harcombe,* of Eugene, for appellants.

*Eugene V. Slattery,* of Eugene (Slattery & Slattery, of Eugene, on the brief), for respondents.

BAILEY, J. The property sought to be recovered in this proceeding consists of 28 apron lavatories com-

plete, 28 china wash-down closets, and 84 angle valves, sold on conditional sales contract to Howard Apartments, Inc., owner of the Howard Tourist Apartments, on which there was a mortgage at the time of the sale. The purchase price named in the contract was $916, upon which an initial payment of $300 was made through the assistance of Mr. Mogensen, trustee.

The principal question involved in this appeal is whether the failure to file with the county clerk of Lane county a memorandum of such sale, as provided by § 64-201, Oregon Code 1930, rendered the sale void as to the mortgagee or to the purchaser of the real property on foreclosure of the mortgage, when the purchaser was the trustee designated in the trust deed.

In May, 1928, Howard Apartments, Inc., hereinafter to be referred to as the Howard corporation, was the owner of certain real property situate on the Pacific highway about four miles north of the city of Eugene, Oregon. The Howard corporation contemplated the construction of a series of tourist apartments on the property and in order to obtain necessary finances for this undertaking it executed a mortgage or trust deed to secure the payment of bonds aggregating $26,000. In this instrument S. Mogensen, a banker at Junction City, Oregon, was designated as trustee.

The funds received from the sale of bonds proved insufficient to complete the construction and furnishing of the apartments, and in July, 1929, after the apartments had remained incomplete and unoccupied for about four months, the president of the Howard corporation procured an estimate from the plaintiffs as to the cost of installing the lavatories, toilets and valves hereinbefore listed. He then, together with a representative of the plaintiffs, went to Junction City

and consulted Mr. Mogensen with reference to obtaining from him or the bank which he represented an additional sum sufficient to purchase or make an initial payment on necessary furniture, also to make a down payment on the plumbing appliances mentioned.

At that meeting Mr. Mogensen was advised that the Howard corporation and the plaintiffs herein were negotiating for the purchase of the items listed, and at that time, in the presence and with the consent of Mr. Mogensen, the plaintiffs and the Howard corporation through its president entered into an agreement whereby the plumbing accessories should be bought and installed, on the condition that they should remain "personal and movable property in whatsoever manner they may be annexed to realty; and that in case of default in the payment of any of the installments" provided for therein, the plaintiffs were authorized to enter upon the premises and remove said articles at any time. A copy of this agreement was left with the trustee.

Approximately three and one-half years thereafter Mr. Mogensen resigned as trustee and in his place appointed Sherman Harkson as such trustee. The latter trustee shortly thereafter started suit to foreclose the mortgage or trust deed. During the pendency of that proceeding Harkson resigned as trustee, and the bondholders named the defendant J. J. McCarthy to act as trustee.

In due course the mortgage was foreclosed and the property ordered sold, at which sale the defendant McCarthy as trustee for the bondholders became purchaser of the real and personal property covered by the mortgage or trust deed. Demand was thereafter made by the plaintiffs upon the defendant McCarthy,

purchaser at the foreclosure sale, and upon Mable Stver, an employee of the defendant McCarthy and in charge of the Howard Tourist Apartments, for possession of the property hereinbefore listed. Upon their refusal to deliver that property to the plaintiffs this action was instituted.

The testimony is uncontroverted to the effect that in order to remove the lavatories all that is necessary to do is to unscrew the ''nickel-plated nuts under the lavatory where the average person calls the faucet. Then unscrew your trap from your wall and just lift your lavatory up and set it down, and take your screw out of this bracket and take these nuts loose from the wall where the pipe sticks out about half an inch, and you have got it detached''. In order to remove the toilets it is necessary to take out two screws and ''take the nut off the bottom of your supply, then unscrew this slip-nut on the bottom of your tank, and lift the tank up and set it down. Then the bowl is there about fifteen inches from the wall. You undo those four screws there in the bowl and just raise it up off the putty''. The angle valves are described as ''wheel-handled'' controls beneath the plumbing appliances, regulating the flow of water in each supply pipe. They may be removed by merely unscrewing them.

The lavatories, toilets and angle valves are easily removable without injuring them and they are then suitable for use elsewhere. The removal of such appliances would not mar or injure walls or floors of the building, and other equipment could easily be put in their place.

The tourist camp was constructed for the purpose of providing accommodations to travelers and without this equipment it could not successfully be operated.

Mr. Howard, who carried on negotiations for the Howard corporation, testified that it was his intention that the attachment of these appliances should be permanent and that the corporation fully intended to make the installment payments when due.

At the close of plaintiffs' case the defendants moved for a non-suit, on the ground that under the evidence and the admissions in the pleadings the conditional sales contract was void because of failure to file a memorandum thereof as required by the section of the code to which reference has above been made. When that motion was denied, defendants moved for a directed verdict, without offering any testimony, assigning therefor the same ground specified in their motion for non-suit. This motion was likewise denied. The court thereupon instructed the jury that the plaintiffs were entitled to immediate possession of the property hereinbefore described and that the only question for the jury to determine was the reasonable market value of the property. The refusal of the court to grant these motions and the giving of the instruction referred to form the basis of the only assignments of error. There is no dispute as to the facts in this case.

■ As between the vendors and the Howard corporation these chattels retained the status of personal property and did not become fixtures in the legal sense, i. e., a part of the realty. Although attached to the structure they did not become an integral part of the building so that they could not easily be removed without sustaining impairment and without materially injuring the building in which they had been placed or causing physical damage thereto, and they had not lost their identity as personal property. They were not manufactured especially for the Howard Tourist

Apartments, could be used elsewhere and could easily be replaced by similar accessories. That it was the intention of both the vendors and the vendee that they were to continue to be considered as personal property is evidenced by the terms of the conditional sales contract that title to such property should remain in the vendors until the purchase price was paid in full; that the chattels "should remain personal and movable property in whatsoever manner they may be annexed to realty"; and that they could be removed by the vendors upon default in the payment of any installment.

The question of when a chattel retains its status as personal property or becomes attached to the realty has been so thoroughly covered by this court in former decisions that it is unnecessary for us to go into the matter again at length: *Johnson v. Pacific Land Co.*, 84 Or. 356 (164 P. 564); *Roseburg National Bank v. Camp*, 89 Or. 67 (173 P. 313); *Dunn v. Assets Realization Co.*, 141 Or. 298 (16 P. (2d) 370, 17 P. (2d) 1118).

■ The test of removability of goods sold under conditional sales contract and affixed to realty is whether detaching them would result in material injury to the freehold, and not whether the goods are essential to the proper functioning of the plant or building in which they have been placed for use: *Detroit Steel Cooperage Company v. Sistersville Brewing Company*, 233 U. S. 712 (34 S. Ct. 753, 58 L. Ed. 1166); *Wheat v. Otis Elevator Co.*, 23 Fed. (2d) 152; *People's Savings & Trust Company v. Munsert*, 212 Wis. 449 (249 N. W. 527, 250 N. W. 527, 88 A. L. R. 1306).

■ Independent of statutory requirement as to the filing of a conditional sales contract, the preponderance of authority in this country is to the effect that when the removal of the property will not materially injure

the premises, the seller thereof retaining title thereto may assert his right to remove the same, as against a prior mortgagee of the realty: Annotations, 37 L. R. A. (N. S.) 120, 13 A. L. R. 461, and 23 A. L. R. 806; *Blanchard v. Eureka Planing Mill Co.*, 58 Or. 37 (113 P. 55, 37 L. R. A. (N. S.) 133). In opposition to the foregoing doctrine are those cases which support the so-called Massachusetts rule to the effect that the rights of the mortgagee cannot be affected by an agreement to which he is not a party, and that the rights of the mortgagee are superior to those of the vendor, even though the latter retains title to the property sold: Annotations, 13 A. L. R. 471, and 37 L. R. A. (N. S.) 126.

The question here involved is whether or not the enactment of § 64-201, supra, has so changed the predominant rule above referred to that it requires the filing of a memorandum of a conditional sales contract in order to protect, as against a prior mortgagee of the realty, the rights of the seller to the possession of personal property which, were it not for the condition under which it was sold, would become a part of the realty. In the solution of this problem little assistance is had from the adjudications of other courts, due to the fact that Massachusetts appears to be the only state, so far as our research has disclosed, which has a statute in any way similar to ours. The Massachusetts statute, § 13, chapter 184, General Laws of Massachusetts (1932 Ed.), provides that no conditional sale of certain designated personal property, such as heating apparatus, plumbing goods and the like, "which are afterwards wrought into or attached to real estate, whether they are fixtures at common law or not, shall be valid as against any mortgagee, purchaser or grantee of such real estate", unless notice as therein

prescribed is recorded in the registry of deeds for the county or district where the real estate lies, not later than ten days after the delivery of such personal property.

The supreme court of Massachusetts has, in a number of instances, had occasion to construe the statute of that state with reference to its application to existing mortgages, and has held consistently that the statute did not affect prior mortgages, as the mortgagee, apart from the statute, was entitled to the benefit of any addition to his security which was attached without his consent. In arriving at this construction the court has read the word ''subsequent'' into the enactment, preceding the words ''mortgagee, purchaser or grantee''. In *Waverley Co-operative Bank v. Haner*, 273 Mass. 477 (173 N. E. 699), after explaining that independent of statute or agreement all property added to real estate after the mortgagee has acquired a lien thereon inures to his benefit and that it was not the intention of the legislature to deprive him of this right without his consent, the court observed:

''The interpretation thus given to the statute is strengthened by words 'purchaser or grantee' used with the word 'mortgagee'. The purchaser or grantee to whom reference is there made would naturally be not an owner at the time a conditional contract duly recorded in accordance with the requirements of the statute is entered into but one who thereafter becomes the owner by purchase or grant.''

Section 64-201, Oregon Code 1930, provides that ''All conditional sales of personal property * * * containing a conditional right to purchase, where the property is thereafter so attached to any real estate as to become a fixture thereto, shall be void as to any purchaser or mortgagee of such real property unless

within ten days after said personal property is placed in and becomes attached to said real property a memorandum of such sale  *  *  *  shall be filed with the county clerk's or county recorder's office of the county wherein such property and real estate'' are situated. And it further provides that in case such memorandum is so filed it shall be notice ''to any purchaser, incumbrancer, or mortgagee of such real property'' of the interest of the vendor of such personal property therein and said property may be removed by the vendor upon condition broken. Section 64-202, Oregon Code 1930, which is a part of the same act, provides for the method in which such memorandum shall be filed and indexed and the debt thereby evidenced satisfied of record.

■ The purpose in enacting the above statute was undoubtedly to protect purchasers and mortgagees of real property against fraudulent claims to personal property previously attached to the realty, and likewise to protect the rights of the vendor of such personal property, by providing a system of public records showing the date of the annexation of the personalty.

■ In referring to ''purchaser'' the statute unquestionably means one purchasing the property after the chattels have become annexed to it, in other words, a subsequent purchaser. And the word ''mortgagee'' does not appear to be used in a different manner from the word ''purchaser'', but to denote a subsequent incumbrancer.

■ Just as the Massachusetts courts have held that the enactment of a similar statute in that state did not by its terms expressly take from a prior mortgagee the rights which apart from the statute he had to the benefit of the increased value of his security when personal property was attached to the realty without his consent,

so it should be held in this state that since a prior mortgagee, independently of the statute, was not entitled to the increased value of his security due to the annexation to it of personal property retaining its identity as such, it was not the intention of the legislature by the enactment of the statute above mentioned to convert personal property into real property upon failure to file certain memoranda. In other words, there is nothing in the act in question to indicate that the legislature of this state had in mind any idea of enhancing the value of the security of a prior mortgagee at the expense of the owner of personal property sold on conditional contract.

■■ In the case before us, we hold that the failure of the vendors, plaintiffs herein, to file a memorandum of the conditional sales contract covering the above listed plumbing appliances did not affect their right in and to such chattels as against the prior mortgagee. When the trustee under the mortgage bid in the property at the foreclosure sale he did not become a purchaser within the meaning of § 64-201, supra. That statute does not contemplate that a mortgagee not within the protection of the act is entitled to the benefit of its provisions upon becoming a purchaser at foreclosure sale. The judgment appealed from is therefore affirmed.

RAND, C. J., and CAMPBELL and KELLY, JJ., concur.