Argued April 13, reversed and remanded September 20, 1961

# STATE HIGHWAY COMMISSION *v.* FEVES ET AL

365 P. 2d 97

*George W. Mead,* Portland, argued the cause and filed a brief for appellants.

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, L. I. Lindas, and Charles Peterson, Assistant Attorneys General, Salem.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Lusk, Justices.

LUSK, J.

The State of Oregon through its Highway Commission commenced this action on October 22, 1959, by filing a complaint for the condemnation of a parcel of land in the city of Portland on which was located

a multiple storied furnished apartment house owned by the defendants.

The defendants filed an answer to the complaint in which they alleged that the fair cash market value of the real property sought to be acquired, together with improvements, furniture, and furnishings and fixtures was $185,000.

Thereafter the parties entered into two stipulations in writing by which they agreed "as a matter of compromise" as follows:

That the fair cash market value of the land and improvements "together with any damages to the defendants' remaining real property, not taking into account furniture, furnishings and fixtures, is in the sum of $165,000.00."

That the building is operated under the name of the Broadway Court Apartments and among the furnishings and furniture therein are certain electric refrigerators, the fair cash market value of which is $2,400, and certain gas ranges and two gas refrigerators, the fair cash market value of which is $2,600. There are also in the building, as part of its equipment, beds, coffee tables, davenports, bookcases, night stands, magazine racks, box springs, overstuffed chairs, floor lamps, dining room tables, hall runners, and vacuum cleaners, having a fair cash market value in place of $5,000, of which amount $250 is the value of a lot of so-called Murphy-type pull-down beds bolted and affixed to the walls of the building. All these are used by the tenants and are part of the furnishings and furniture in the furnished apartments rented to the tenants of said apartment house.

The gas ranges and gas refrigerators are affixed to the building by pipes connecting them with the gas service; the electric refrigerators are connected

to the electrical system by a standard type of 110 volt electric plug in an electric outlet.

"That all of the above mentioned furniture, equipment and fixtures would have a used market value lower than the agreed fair market value in place if the same were removed from the premises and sold on the open market.

"That all of the above mentioned furniture, equipment and fixtures more particularly described were installed on the premises acquired by the State by the owners with the intention that such furniture, equipment and fixtures be used in connection with the building and leased to the tenants as furnished apartments.

"That in the metropolitan area of Portland in which the real property known as the Broadway Court Apartments involved in this matter is situated, sales of such apartment buildings which include furnished apartments such as this building usually include the sale with the building of all furniture, equipment and fixtures and that such items of property are usually bought and sold with the building.

"That all furniture and furnishings situated in the said building are those which are normally found in similar furnished apartments in the metropolitan area and may be readily purchased at any retail furniture store and were not specifically constructed for this particular building and that the same may be removed without injury to the remaining real property or to the particular furniture and furnishings itself."

It was further stipulated that the parties, being unable to agree as to whether the items of property so described were a part of the realty for which the plaintiff was liable to pay compensation to the defendants in such condemnation proceeding, were submitting that question to the court to be determined on the basis of the stipulated facts.

After a hearing, the court entered findings of fact to the effect that all of the items of property listed in the stipulation, with the exception of the "Murphy-type beds", were personal property. The Murphy-type beds were held to be fixtures and a part of the realty and their value, $250, was included in the judgment which the plaintiff was required to pay as compensation for the property taken.

The defendants have appealed and the principal question presented is whether the court erred in its determination that none of the items of property listed in the stipulation except the Murphy-type beds was a part of the realty.

This court, in common with others, has many times had occasion to deal with the law of fixtures, which was said by Mr. Justice ROBERT S. BEAN in *Helm et al. v. Gilroy et al.,* 20 Or 517, 522, 26 P 851, to be "one of the most uncertain titles in the entire body of jurisprudence." The opinion of Mr. Justice ROSSMAN in *Metropolitan Life Ins. Co. v. Kimball,* 163 Or 31, 94 P2d 1101, decided in 1939, contains a comprehensive review of our decisions touching this subject up to that time. In that case, and many others before and since, this court, in endeavoring to determine the frequently illusive question whether a chattel when attached to the realty retains its character as personalty or becomes a fixture, i.e., a part of the realty, has resorted to the aid of the tests practically everywhere accepted of annexation, adaptation, and intention. Among the more recent cases see *Waldorf v. Elliott,* 214 Or 437, 442, 330 P2d 355; *Elliott et ux v. Tallmadge,* 207 Or 428, 430, 297 P2d 310, 57 ALR2d 1099; *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 414-415, 281 P2d 707.

■■ The intention with which a chattel is annexed

to the realty has been said to be of controlling importance, at least where there is doubt as to the effect of
the other two tests. *Elliott v. Tallmadge,* supra, 207
Or at 430; *Metroplitan Life Ins. Co. v. Kimball,* supra,
163 Or at 47; *Dunn v. Assets Realization Co.,* 141 Or
298, 301-302, 16 P2d 370, 17 P2d 1118; *First State etc.
Bank v. Oliver et al.,* 101 Or 42, 49, 198 P 920. The
intention of which the courts speak, however, is an
objective one. It is not, as we said in the *Dunn* case,
a question of "secret plans or mental reservations."
What controls is "the nature of the article, the relation of the party making or maintaining the annexation, the policy of the law in relation thereto, the
structure and mode of annexation, and the purpose
and use for which it is made". *First State etc. Bank
v. Oliver,* supra, 101 Or at 49, and cases there cited.
For example, it is easier to find an intention to make
an addition to real property a part of the realty
when the annexation is made by the owner of the
realty, *Metropolitan Life Ins. Co. v. Kimball,* supra,
163 Or at 50; *First State etc. Bank v. Oliver,* supra,
101 Or at 51, than when made by a tenant upon leased
property, for, as Mr. Justice HARRIS said in *Roseburg
Nat. Bank v. Camp,* 89 Or 67, 77, 173 P 313:

> "* * * When additions are made to land by
> the owner the purpose is usually to enhance the
> value and to be permanent; but on the other hand
> when additions are made by a tenant they are
> usually made for a temporary purpose and not
> with a view of making them a part of the land;
> * * * "

See, also, *Highway Comm. v. Superbilt Mfg. Co.,*
supra, 204 Or at 415.

■ Electric ranges in an apartment house were the
subject of controversy in *Dunn v. Assets Realization*

*Co.,* supra. The claimants were a seller in an unrecorded contract of conditional sale of the ranges, on one side, and a mortgagor of the real estate, on the other. The conditional sale contract was prior in time to the mortgage. The court held that the ranges were personal property and therefore not covered by the real estate mortgage. Whether the mortgage was given before or after the contract was said to be immaterial, and the statute[1] declaring conditional sales of personal property where the property is thereafter attached to any real estate so as to become a "fixture" void as to a subsequent purchaser or mortgagee of the real property, unless the contract is recorded within ten days after the personal property is so attached, was held inapplicable. Personal property, it was said, is not a fixture within the meaning of the statute "if it can be removed without material injury to the articles themselves or to the freehold". 141 Or at 304.

We have not here the element of a conditional sale contract evidencing an intention to treat the chattels after attachment to the real estate as personal property. The only relationship involved is that of condemnor and condemnee, which is tantamount for the purposes of a case of this kind to the relationship of vendor and vendee or mortgagor and mortgagee. *Highway Comm. v. Superbilt Mfg. Co.,* supra, 204 Or at 421. It could be argued that for this reason the *Dunn* case is not a controlling precedent.

But the later decision in *Elliott v. Tallmadge,* supra, contains no such feature and affords no basis for the suggested distinction or for misunderstanding of the scope of the *Dunn* decision. The chattels involved in *Elliott v. Tallmadge* were four electric

[1] Oregon Code 1930, § 64-201, now ORS 76.010.

refrigerators and four electric ranges installed in apartments over a bakery shop. To finance the building of the apartments the owners borrowed money from the plaintiffs and secured the loan by a mortgage of the premises. The owners thereafter were adjudged bankrupt and the plaintiffs foreclosed their mortgage and bought in the premises at the execution sale. The action was between the trustee in bankruptcy, who claimed the refrigerators and ranges as personal property, and the mortgagees, who asserted that title to the disputed property had passed to them through the execution sale as part of the realty. We held for the trustee in bankruptcy on the authority of the *Dunn* case.

Apart from the conditional sale factor in the *Dunn* case, the controlling considerations in both these cases upon the question of intention were the mode of annexation of the chattels, their adaptability to the purposes of the owner and the fact that they were not specially built for the buildings in which they were installed.

In this respect the reasoning is similar to that of the California court in *City of Los Angeles v. Klinker,* 219 Cal 198, 25 P2d 826, 90 ALR 148. This was an action to condemn buildings in which the Los Angeles Times was published. Among other questions presented was whether the huge presses in one of the buildings were part of the realty and should be compensated for as such. The court held that they were fixtures. In the discussion of this question the court said:

"It is, of course, true that the manner in which the fixtures are annexed, the purpose for which the premises are used and the intention of the persons who made the annexation are all to receive weight in settling this issue. It is also true that

the intention of the parties, where mutual rights are involved, is of controlling importance, such as in the case of a lessor and lessee, or vendor and vendee under a conditional sales contract. But where, as here, the owner's own conduct alone is to be reviewed, the nature and adaptability of the machinery and the manner of its installation would practically control the question of intent as against a vendor or a condemnor. * * *" 219 Cal at 209.

Elsewhere, as is to be expected in cases involving the law of fixtures, there are decisions contrary to this court's. *Guardian Life Ins. Co. of America v. Swanson,* 286 Ill App 278, 3 NE2d 324, ably sets forth the view that refrigerators installed in apartments are fixtures. The court said that it was a well-known fact that refrigeration in a modern apartment house is "economically essential" and drew upon the analogy of machinery installed in a factory or mill to support its conclusion. Cf *Metropolitan Life Ins. Co. v. Kimball* and *Highway Comm. v. Superbilt Mfg. Co.,* both supra. See also *Evans v. Ockershausen,* 100 F2d 695, 707 (DC Cir. 1938), 128 ALR 177 (cert d. 306 US 633, 59 S Ct 462, 83 L ed 1034); *Peed v. Bennett,* 114 Ind App 412, 52 NE2d 629; *Union Stove Works v. Klingman,* 20 App Div 449, 46 NYS 721, affirmed 164 NY 589, 58 NE 1093.

The stipulation of facts here indicates that the electric refrigerators with which this case is concerned could be disconnected by unscrewing the electric plugs from the sockets and presumably the gas refrigerators and gas ranges could be removed by disconnecting the unions attached to the piping, all without injury to the building or the chattels themselves. We recognize that in many cases little weight is given to this factor. See *Metropolitan Life Ins. Co. v. Kimball,* supra, 163 Or at 52, and *Helm v. Gilroy,*

supra, 20 Or at 522-523. Nevertheless, *Dunn v. Assets Realization Co.* and *Elliott v. Tallmadge* are controlling decisions here and, as they announce a rule of property, they should not be disturbed.

*A fortiori,* the other items of property listed in the stipulations, the beds, coffee tables, davenports, etc., are not real property.

In our opinion, the stipulated fact that in sales of apartment buildings similar to the Broadway Court Apartments, the furniture, equipment and fixtures are usually sold with the building is not a dispositive factor. One reason for this custom, of course, is that these items of property, as the parties have stipulated, would have only a used market value if removed and sold on the open market. It may be conceded that the building and its contents constitute an economic unit, but it does not follow that every article of personal property in the building is for that reason to be considered a fixture which the state must take and pay for. The doctrine of constructive annexation (see *Metropolitan Life Ins. Co. v. Kimball,* supra, 163 Or at 52-53) does not go so far. The argument indeed proves too much, because, while there is room for the contention that the ranges and refrigerators are fixtures, this can hardly be said with respect to the other items of personal property involved.

The defendants urge that even though the items other than the refrigerators and ranges are not fixtures, still they enhanced the value of the building and that the defendants should be compensated accordingly. As the brief of the defendants points out: "[T]his problem is considered in connection with cost of removal." The contention that a condemnee is entitled to recover such cost was fully considered in *Highway Comm. v. Superbilt Mfg. Co.,* supra, and

determined adversely to the condemnee. If the question be viewed as one of the right to recover consequential or incidental damages, it is sufficient to say that there is no such right in condemnation proceedings under the constitution or statutes of this state, other than the right to recover for injury to the portion of the real property not taken. It may be that in strict justice such damages should be allowed, but that is a matter for the legislature, not the courts. Finally, it would appear that the defendants are foreclosed by the stipulation from insisting upon this contention. The parties have agreed that the fair cash market value of the real property together with damages to the defendants' remaining real property amounts to $165,000. Once it is determined that the items of property other than the Murphy beds listed in the stipulation are not part of the real property, it would seem that the court is precluded from increasing the sum agreed upon by giving consideration to this asserted enhanced value.

■ The defendants assign as error the court's denial of their application for an allowance of costs, including an attorney's fee. ORS 366.380(9) reads:

> "The costs and disbursements of the defendants, including a reasonable attorney's fee to be fixed by the court, shall be taxed by the clerk and recovered from the state; but if it appears that the commission tendered the defendants before commencing the action an amount equal to or greater than that assessed by the jury, the state shall recover its necessary disbursements from the defendants."

The statute means that the defendants in a condemnation action are entitled to recover costs including a reasonable attorney's fee in all cases except where the amount "assessed by the jury" fails to exceed the

amount tendered by the plaintiff to the defendants before the commencement of the action. The statute applies whether the trial is by a jury or by the judge sitting without a jury.

In this case the amount tendered by the plaintiff was $154,500. The amount of compensation to which the defendants are entitled was found by the court to be $165,250, made up of the stipulated value of the land and building, $165,000, and $250, the stipulated value of the Murphy beds. The issue as to the Murphy beds was the only litigated question upon which the defendants prevailed.

In our opinion, it is immaterial whether the amount recovered by the defendants is the result of a compromise of some or all of the issues pertaining to value. It is, nonetheless, an amount "assessed" by the court or jury, as the case may be, and if it exceeds the amount tendered by the commission before commencing the action the defendants, under the clear language of the statute, are entitled to recover their costs, including a reasonable attorney's fee.

Counsel for the commission say that such an allowance was not contemplated by the commission at the time that the stipulation was entered into. But the stipulation is silent on the subject and the court cannot read into it an intention of the defendants to waive their rights under the statute.

■■ By their stipulation the parties agreed to the fair cash market value of the various items of property, the damages to the real property not taken, and certain facts considered to be relevant upon the question of fixtures. They did not stipulate concerning the entry of a judgment. The language of a stipulation, whether it be an agreed statement of facts or relates to other matters, will not be so construed as to give

it the effect of a waiver of a right not plainly intended to be relinquished. 83 CJS 66, Stipulations, § 25; 50 Am Jur 609, Stipulations, § 8. If the parties had intended a waiver by the defendants of their right to recover costs and an attorney's fee under the statute they should have said so.

As the authority to fix a reasonable attorney's fee is conferred upon the circuit court, not this court, it becomes necessary for us to remand the case to the circuit court with directions to enter a new judgment for the amount previously assessed and, in addition, for the costs and disbursements incurred by the defendants, including a reasonable attorney's fee to be fixed by the court.

Reversed and remanded.