Argued May 4, reversed July 15, 1959

# WARM SPRINGS LUMBER CO. *v.* STATE TAX COMMISSION

342 P. 2d 143

*Carlisle B. Roberts,* Assistant Attorney General, and *Ira W. Jones,* Assistant Attorney General, Salem, argued the cause for appellant. With them on the briefs was Robert Y. Thornton, Attorney General.

*Charles P. Duffy,* Portland, argued the cause for respondent. With him on the brief were Carl E. Davidson and Davidson, Duffy & Stout, Portland.

Before McAllister, Chief Justice, and Rossman, Lusk, Warner, Perry, Crawford and Millard, Justices.

Reversed.

LUSK, J.

During the years involved in this case, the Corporation Excise Tax Law of 1929 (ORS ch 317) contained the following provision:

> "Every mercantile, manufacturing and business corporation doing or authorized to do business within this state, except as provided in ORS 317.080 to 317.090, shall annually pay to this state, for the privilege of carrying on or doing business by it within this state, an excise tax according to or measured by its net income, to be computed in the manner provided by this chapter, at the rate of eight per cent." ORS 317.070.

The exceptions stated in the section are not material here. Each corporation subject to the excise tax was "entitled to an offset against the tax imposed by * * * [ORS 317.070] in the amount of taxes assessed to and paid by it upon its personal property located in this state * * *." ORS 317.085. No offset was permitted in excess of 50% of the excise tax.

The plaintiff, Warm Springs Lumber Company, is an Oregon corporation engaged in logging and lumber manufacturing, with its principal place of business in Warm Springs, County of Jefferson, state of Oregon. The defendants, members of the Oregon State Tax Commission, will hereinafter be referred to as the Commission. This case involves the plaintiff's excise taxes for each of the years 1947 to 1953 inclusive, and for its fiscal year ended April 30, 1955.

The controversy arises out of offsets claimed by the plaintiff on account of personal property taxes paid by the plaintiff during each of these years. These

taxes were paid to Jefferson and Wasco counties upon assessments which classified the property in question as tangible personal property. Regardless of this fact, it is the view of the Commission that the property is real property within the meaning of the Corporation Excise Tax Law, and the offsets, therefore, are not allowable. Accordingly, the Commission at various times during the years 1956 and 1957 mailed to the plaintiff notices of deficiencies and assessments for each of the years in question. Plaintiff, having paid the alleged deficiencies under protest, appealed to the Commission from these various assessments on the grounds not only that the offsets claimed were proper, but also that the assessments for the years 1947 to 1951 inclusive were barred by the special three-year statute of limitations found in ORS 314.410. After a hearing, the Commission entered an order denying the appeal, and plaintiff then filed this proceeding in the circuit court pursuant to ORS 314.460. The Commission filed a demurrer to the complaint by which it raised the two questions involved on this appeal, namely, whether the taxes paid to the counties should have been classified as real or personal property taxes, and whether the statute of limitations applies. The circuit court over-ruled the demurrer and, the Commission refusing to plead further, entered a decree vacating the Commission's order and ordering it to refund to the plaintiff the sum of $44,061.92 (the amount paid under protest), together with interest thereon from February 20, 1958. From that decree the Commission has appealed.

1. *Was Plaintiff Entitled to the Offsets Claimed?*

An exhibit attached to and incorporated in the complaint by reference contains the following state-

ment concerning the property of the plaintiff whose character as real or personal property is in question:

"The buildings in question consist principally of a sawmill, dry kilns, planing mill, factory, warehouse and sorting sheds. These have no solid footings but, for the most part, rest upon concrete posts. There are also about forty temporary dwellings for the workmen.

"All of these improvements are constructed on Indian lands. The pertinent part of the agreement of December 1, 1947, between Warm Springs Lumber Company and the Confederated Tribes of the Warm Springs Reservation of Oregon, provides that:

"'c. That at the expiration or termination of the "Timber Contract" the above described lands shall be surrendered to and in a condition acceptable to the Confederated Tribes and the Superintendent.

"'d. It is understood and agreed that any buildings or other improvements placed upon said land by the company shall remain its property unless otherwise provided and may be removed by it at any time within two years after the expiration of this lease.'"

The Commission's demurrer admits the truth of the foregoing averments.

The applicable provisions of ORS are as follows:

307.010 (1). "'Land,' 'real estate' and 'real property' include the land itself, above or under water; all *buildings, structures,* improvements, machinery, equipment or fixtures *erected upon,* under, above or affixed to *the same*; all mines, minerals, quarries and trees in, under or upon the land; all water rights and water powers and all other rights and privileges in any wise appertaining to the land; and any estate, right, title or interest whatever in the land or real property, less than the fee simple." (Italics added.)

307.020. "(2) Unless otherwise specifically provided, 'personal property' or 'personal estate', as used in the laws of this state relating to assessment and taxation of property as such, means 'tangible personal property' as defined in subsection (3) of this section.

"(3) 'Tangible personal property' means and includes all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, tools and equipment and all machinery and equipment used in the manufacture of raw or partially manufactured products."

317.085 (3). "For the purpose of the offset provided in this section there shall be included only taxes assessed to and paid upon *property properly classified as tangible personal property under the definition contained in ORS 307.020, as to personal property locally assessed,* and as personal property under the definition contained in ORS 308.510, as to personal property assessed by the State Tax Commission, *but taxes paid on property improperly assessed as tangible personal property shall not be included in the offset.* \* \* \*." (Italics added.)

308.115 (2). "\* \* \* whenever any building, structure, improvement, machinery, equipment or fixture is owned separately and apart from the land or real property whereon it stands or to which it is affixed, such building, structure, improvement, machinery, equipment or fixture shall be assessed and taxed in the name of the owner thereof."

■■ The meaning of these provisions is entirely clear and it is equally clear that the buildings and structures described in the complaint are erected upon land. They are, therefore, real property within the meaning of ORS 307.010 (1) and not tangible personal property as defined in ORS 307.020 (2), (3). For the

purpose of the offset of personal property taxes paid, the definition in ORS 307.020 (1) and (2) determines what is tangible personal property, and the fact that taxes may have been paid on property improperly assessed as tangible personal property is immaterial. Such taxes, the statute says, shall not be included in the offset. ORS 317.085. Consequently, the argument in the Company's brief that the original property tax assessment upon which the taxes were initially paid is presumed to be correct (citing *Case v. Chambers et al*, 210 Or 680, 703, 314 P2d 256) is without force, as the presumption, if one is to be indulged at all when considering a case like this, can not stand against the clear command of the statute.

■ The Company argues that the parties may agree that the annexation of a chattel to the land shall not deprive it of its character as personalty and, therefore, that the buildings were properly assessed as personal property. The rule invoked is valid as between the parties. But there are numerous instances in which it does not hold good where the rights of third persons are involved. Certainly such an agreement can not control the action of the state when exercising its taxing power. The authorities are reviewed at length in an able opinion by Spence, J., in *Trabue Pittman Corp. v. County of L. A.*, 29 Cal2d 385, 175 P2d 512. In that case, it appears that plaintiff was the owner of a building leased to a national banking association. Under the terms of the lease, it was agreed that certain fixtures installed by the bank, such as vault doors, tellers' cages, etc., might be removed by the lessee upon the termination of the lease. The county assessed the fixtures to the owner of the building as improvements to real property; the owner contended that they were personal property of the bank. As such

they would not be taxable at all, because Congress has not consented to the taxation by states of the personal property of national banks. See *First National Bank of Portland v. Marion County,* 169 Or 595, 597, 130 P2d 9 (1942). The court sustained the position of the county, one of the grounds of decision being that the statute of California declared that real estate shall include "improvements," and improvements were defined as including "fixtures." "It is well settled," the court said, "that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not." 29 Cal 2d at 393. Beyond that, it was shown by citation to a wealth of authority and for a variety of reasons (among others, that trade fixtures removable by a tenant are a part of the realty until removed, 29 Cal2d at 395) that for purposes of taxation such fixtures may properly be assessed as real property.

In the course of the opinion, the California court commented on *First National Bank of Portland v. Marion County,* supra, a case cited in the plaintiff's brief and referred to as "apparently contrary" to the California decision. We think that the two decisions are not inharmonious. The question in *First National Bank of Portland v. Marion County* was whether fixtures and equipment of a national bank installed in a building occupied by the bank as a lessee were properly assessed as real property to the bank. The lease reserved to the lessee the right to remove the property in question. We held the assessment void for the reason that during the period involved the statutes of Oregon relating to taxation made no provision for the assessment of a leasehold interest of the lessee, or, in other words, that various interests in real prop-

erty were not, for the purpose of taxation, made severable and assessable in the names of the owners of the respective interests, except in certain instances which did not include owners and their lessees. 169 Or at 612-613. The court expressly refrained from passing upon the question whether the bank's trade fixtures and equipment were real or personal property within the meaning of those terms as used in our tax law. 169 Or at 615. There is nothing, therefore, in this decision, or in the other cases involving trade fixtures cited by the plaintiff, which is inconsistent with what was held in *Trabue Pittman Corp. v. County of L. A.*, supra, or with the view we take of the present case.

At the next session of the legislature following the decision in *First National Bank of Portland v. Marion County*, the statute (OCLA §§ 110-314) was amended so as to provide for separate assessment and taxation of buildings, structures, etc., owned separately from the land whereon they stand or to which they are affixed. Oregon Laws 1943, ch 304, § 2, now ORS 308.115(2), set out supra. In view of this amendment and the definitions of real and tangible personal property adopted by the legislature for tax purposes, it is our opinion that the property here in question must be deemed real property and the taxes paid by the plaintiff thereon were not available as offsets against the plaintiff's corporation excise tax.

2. *Is the Statute of Limitation Applicable?*

The Corporation Excise Tax Law contained the following provisions during the years in question: ·
ORS 317.405(1):
"As soon as practicable after the return is filed the commission shall audit it and compute the tax,

and shall give notice to the taxpayer of any deficiency and of its proposal to assess the same * * *."

ORS 317.410(1):

"(1) If the commission discovers from the audit of the return or otherwise that any portion of the income of any taxpayer has not been assessed, it may, at any time within three years after the return was filed, compute the tax and give notice to the taxpayer of the amount due, including penalty and interest thereon. However, if the commission finds that gross income equal to 25 percent or more of the gross income reported has been omitted from the taxpayer's return, additional tax may be assessed upon such return at any time within five years after the return was filed. These limitations to the assessment of such tax or additional tax, including penalty and interest thereon, shall not apply to the assessment of additional taxes, and penalty and interest thereon, upon false or fraudulent returns, or in cases where no return has been filed. * * *."

The plaintiff contends that the taxes involved in this case are additional assessments for the years 1947 to 1951 which were made after the expiration of the three-year period provided in the foregoing statute and are, therefore, barred. The Commission answers that it has not made additional assessments of excise tax, but is merely endeavoring to collect unpaid taxes already assessed against which improper offsets have been claimed. The Commission says that the statute of limitations is applicable only to the taxation of omitted income; that the income of the plaintiff was correctly reported in its returns, and that the only error was in the offsets which, it is argued, are nothing more nor less than payments or credits on the tax determined. Therefore, it is said, the case is no dif-

ferent than it would be if the taxpayer had been given credit for payment of a check which had been returned for insufficient funds.

Bearing in mind that statutes limiting the time for action by the government in collecting its taxes are to be strictly construed in favor of the government, *U. S. v. Southern Lumber Company* (8 Cir) 51 F2d 956, 78 ALR 619, cert den 284 US 680, 76 L ed 574, 52 S Ct 197, we see no escape from the state's position. By its terms the statute of limitations is confined to cases where the commission discovers from the audit provided for in ORS 317.405(1), or otherwise, that *"any portion* of the *income* of any taxpayer has not been assessed." [italics added] The word "assessed" is variously defined according to the context in which it is used. See 4 Words and Phrases (perm ed) 408 et seq. As stated in *Philadelphia B. & W. R. Company v. Mayor and Council et al.,* 30 Del Chan 213, 57 A2d 759, 764, "the words 'assessed or assessment', when applied to taxation may have a broad or a narrow meaning, depending upon the context of the statute * * *. They may, therefore, mean merely the valuation of property, or may include the entire method of imposing the tax." In income tax law it is said that "an assessment is completed when the person and income to be taxed have been properly listed and the amount determined so as to be ready for certification to the treasurer." *Weyenberg Shoe Manufacturing Co. v. Kelley,* 210 Wis 638, 246 NW 48.

There has been some discussion in the briefs of the term "self-assessment", meaning thereby assessment by the filing of a return. (See 9 Mertens Law of Federal Income Taxation, § 49.81; *Atlantic Mutual Insurance Co. v. McMahon,* 153 F Sup 48) but, as the parties seem to be agreed that the propriety of the

use of that expression is not involved, it need not be given further attention.

For present purposes it is not necessary to determine whether the word "assessed" in ORS 317.410(1) is used in its widest or in a restricted sense. It is sufficient to inquire whether the word was intended to include the action of the Commission in finding that there was a tax deficiency because of improper offsets claimed by the plaintiff.

■ Offset is thus defined in Black's Law Dictionary, 4th ed, p 1237:

"A deduction; a counterclaim; a contrary claim or demand by which a given claim may be lessened or canceled."

In tax law an *offset* is a different thing from a *deduction* taken for the purpose of determining net income. 5 Mertens op. cit.; *Northwestern Ice & Cold Storage Co. v. Galloway,* 151 Or 260, 49 P2d 359; *Keyes v. Chambers et al.,* 209 Or at 605, 307 P2d 498. In *Northwestern Ice & Cold Storage Co. v. Galloway,* we considered the question whether under the corporation excise tax law the taxpayer could offset personal property taxes accrued but not paid. In holding that the tax must have been paid before it was entitled to be used as an offset, we called attention to the difference between a deduction and an offset, and said:

"* * * Under the statute, as we construe it, in all cases the offset consists of a payment credited upon a payment."   (151 Or at 266).

In *Keyes v. Chambers* the question was whether a taxpayer was entitled to a credit against personal income taxes for income taxes paid by her to the Canadian Government.   The statute provided that

"Residents of this state shall be allowed a credit against the taxes imposed by this act for net income taxes imposed by and paid to another state or country on income taxes under this act." OCLA, § 110-1605(a). In construing the statute, we said:

> "A provision allowing a credit against a tax is, in effect, an exemption from liability for a tax already determined and admittedly valid." (207 Or at 645).

The word "credit", as used in such a statute, is the equivalent of an offset. 3 Paul and Mertens Law of Federal Income Taxation 535, note 13. And the provision for a credit on account of taxes paid to a foreign country "is a permissive *credit against taxes* and is not to be confused with the *deduction* of certain taxes in determining net income." 5 Mertens op.cit., § 33.01, ch 33, p 5.

It follows from these authorities that this case is not concerned with income that has not been assessed. No error in the amount of the tax is involved, for there is no charge that the income of the plaintiff was not correctly reported in its returns. In effect, the Commission found that credit for a payment upon a tax previously correctly determined had been erroneously claimed by the taxpayer and allowed by the Commission. It did nothing with regard to the income of the taxpayer or the amount of the tax. The three-year limitation on the Commission's action applies to a case where the Commission discovers "that the income of any taxpayer, or any portion thereof, has not been assessed." The Commission may, in that event, within three years after the return was filed "compute the tax and give notice to the taxpayer of the amount due" etc. The Commission made no such discovery, nor did it compute the tax. It simply ascer-

tained the balance due for failure of payment and notified the taxpayer of the deficiency. The statute does not apply to such a case, and there is no other statute imposing a limitation of time on the Commission's authority to collect the deficiency.

The plaintiff cites regulation 6.605(1) of the regulations of the Commission relating to the Personal Income Tax Act and made applicable to the Corporation Excise Tax Act by regulation 7.000 relating to the latter act. Regulation 6.605(1) reads:

> "A deficiency is the amount by which the tax as correctly computed exceeds the tax reported by the taxpayer, after adjustments for prior assessments, collections, refunds, credits and abatements."

Counsel for plaintiff, in quoting the regulation, have emphasized the words "after adjustments for credits." We do not think that adoption of this regulation has any bearing on the question before us. As stated in 9 Mertens op.cit, § 49.129:

> "A deficiency is neither a legal theory nor an intangible concept. It is an *amount* of tax due representing the difference between the amount returned by the taxpayer and the amount which, in fact and law, is due the Government."

Counsel argue that it would appear from the regulation "that the amounts in question here constituted 'deficiencies' and had to be assesed within three years from the time the respective returns were filed." But before it can be said that the statute of limitations is applicable it must appear that there was income of the taxpayer which had not been assessed, and the regulation, as we view it, throws no light on that question.

Plaintiff calls our attention to *Rothensies, Collec-*

*tor v. Electric Storage Battery Co.,* 329 US 296, at 301, 67 SCt 271, at 273, 91 L ed 296, where the Supreme Court, commenting on the need of a statute of limitations in an income tax system, concluded: "Hence, a statute of limitation is an almost indispensable element of fairness as well as practical administration of an income tax policy." There can be no question about the soundness of this observation. But the court cannot supply a statute of limitations where the legislature has failed to enact one, nor, where the state is concerned, even adopt a liberal construction of such a statute in order to make it apply to a case which does not come within its terms. Thus, we are reluctantly brought to the conclusion that the statute of limitations here in question is not a bar to the collection of the taxes for the years 1947 to 1951.

The decree of the circuit court is reversed. No costs or disbursements will be allowed.

WARNER, J., sat but did not participate in the decision.