# MOORE and PAULSON, dba EUGENE GRANITE & MARBLE WORKS *v.* DEPARTMENT OF REVENUE

Edward Ray Fechtel, Husband, Johnson & Frye, Eugene, represented plaintiffs.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered November 19, 1971.

LOREN D. HICKS, Judge pro tempore.

Plaintiffs appeal from an order of the Department of Revenue holding that the department was without jurisdiction to hear the matter in question. The dis-

pute concerns a small house in Lane County belonging to the plaintiffs which is located on land owned by plaintiffs' landlord. The house was placed on the property by a former tenant who sold his lease and the house to plaintiffs. The lease treated the building as personal property and the plaintiffs reported it as such on their 1964 personal property tax return. The assessor struck the item from the return and assessed it to the landlord as real property. The landlord paid the taxes for 1964 through 1969.

In the fall of 1970, after the assessment roll had been returned to the assessor by the board of equalization, the assessor, evidently learning that the plaintiffs owned the house, assessed it to plaintiffs as real property without any increase in valuation and without any notice to them of his action. Plaintiffs first learned of the change when they received the 1970-71 tax statement. They objected to the valuation and appealed directly to the Department of Revenue pursuant to ORS 306.520 which provides in part:

"(1) Any taxpayer aggrieved by an act or omission of a county assessor or tax collector which affects his property and for which there is no other statutory remedy may * * * appeal to the Department of Revenue * * *."

The Director of the Department of Revenue dismissed plaintiffs' appeal on the ground a challenge of the assessor's valuation is normally made by an appeal to the board of equalization and then to the Department of Revenue. ORS 309.100; ORS 306.515. The director concluded that even though plaintiffs learned of the change too late to appeal to the board under ORS 309.100, they had their statutory remedy in that section because they knew they owned the property and should have been paying taxes on it.

The situation presented here is different than in *T & R Service v. Commission*, 3 OTR 271 (1968), where the taxpayer had failed to appeal a subsequent tax year while an appeal for the previous year was pending. This court held there that the taxpayer had a remedy under ORS 309.100 because he had a duty without additional notice to make a timely inspection of the subsequent year's assessment to determine if he wished to appeal it to the board of equalization. In the case now before the court the plaintiffs had made no objection to previous actions of the assessor and nothing had occurred to give them cause to inspect the county's assessment records.

A case more nearly similar to the instant one is *Hult Lumber v. Dept. of Rev.*, 3 OTR 507 (1969), where the assessor had changed the valuation of property without notifying the taxpayer who learned of the change after the time to appeal to the board of equalization had expired. This court held that the taxpayer had no other statutory remedy at the time of learning of the assessor's action and therefore was entitled to appeal under ORS 306.520.

■ In the present case, a significant change of position by the assessor affecting the property of plaintiffs occurred too late to allow plaintiffs to appeal to the board of equalization. Plaintiffs had no notice of their substitution as taxpayers in place of the owner of the land who had been assessed for, and paid, the taxes for the previous six years. The record does not reveal why the plaintiffs had not previously questioned the assessment, or why the assessor had not assessed the property to the plaintiffs in 1964. So far as can be determined from the record, at the time of the particular act of the assessor that gave them personal cause to want to appeal, plaintiffs, through no

fault of their own, were without any other statutory remedy and therefore were entitled to appeal to the Department of Revenue under ORS 306.520.

The parties stipulated at trial that if the court found that the department had jurisdiction, it should rule on the remaining issue of the valuation of the house. The parties also stipulated that valuation depended upon whether the house is held to be personal property or real property, and that if it is personal property its true cash value is $1,300 and if it is real property, its true cash value is $6,820 as set by the assessor for January 1, 1970.

The lease of the land and other buildings was entered into in 1960. Its present term expires in August 1973. It provides that the lessee shall have the right to construct buildings on the property and that any such improvements shall be considered personal property and may be removed by the lessee at the termination of the lease. The house in question was moved onto the property from another location by the original lessee. At that time it contained only a sales office and a bedroom. It was placed on a pre-existing cement slab without being bolted or otherwise fastened down. The cement slab served both as support and as the interior floor. Later plaintiffs installed an unattached wooden floor and added a dining room and another bedroom, bringing the building's overall measurements to about 27 feet by 35 feet. The house is used by one of the plaintiffs, Mr. Moore, as his family residence. The rest of the leased premises, including other buildings, is used in plaintiffs' monument business. Mr. Moore testified that he plans to move the house to a new location at the termination of the lease.

The plaintiffs contend that, pursuant to the lease and the intention of the parties, their interest is sever-

able and the house is personal property because it is a "movable" chattel rather than an "improvement" to real property. Defendant contends that the house is not a "movable" even though it can and may be moved and that the house being placed and used upon land makes it an "improvement" to the land and thus real property.

As a general rule, a building is considered to be an improvement to the land and to have the character of real property.[1] It is also well recognized that interested parties may agree that a structure placed on land may be considered personalty. *Gen. Petroleum Corp. v. Schefter,* 141 Or 349, 352, 16 P2d 645 (1933). 35 Am Jur2d, *Fixtures,* §§ 78, 80, 86 and 90; 41 Am Jur2d, *Improvements,* § 3. However, such an agreement does not cause a structure to become personalty for all purposes as to all persons. *Warm Sprgs. Lbr. Co. v. Tax Com.,* 217 Or 219, 342 P2d 143 (1959); *Pepin v. City of North Bend,* 198 F Supp 644 (Or 1961); *Comstock v. Town of Waterford,* 85 Conn 6, 81 A 1059 (1911); *LaPaul v. Heywood,* 113 Minn 376, 129 NW 763 (1911).

In the case now before the court, the question is whether plaintiffs' house should be termed real property or personal property for purposes of taxation, and not whether it is realty or personalty as between plaintiffs and the owner of the leased premises.

ORS 307.020 (2) and (3) define personal property for tax purposes as "all chattels and movables, such as boats and vessels, merchandise and stock in trade,

---

[1] The usual rule for determining whether personalty has become realty requires the united application of three tests: (1) annexation, (2) adaptation, and (3) intention, with intention of the parties being the most important element. *Waldorf v. Elliott,* 214 Or 437, 330 P2d 355 (1958); *Blake-McFall Co. v. Wilson,* 98 Or 626, 193 P 902 (1921).

furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment." Plaintiffs' house does not fit into this definition and is not at all similar to any of the examples listed.

On the other hand, ORS 307.010 (1) defines real property for tax purposes to include "the land itself, * * * all buildings, structures, improvements, machinery, equipment or fixtures erected upon, under, above or affixed to the same; * * * and any estate, right, title or interest whatever in the land or real property, less than the fee simple." And ORS 308.115 (2) provides that "whenever any building, structure, improvement, machinery, equipment or fixture is owned separately and apart from the land or real property whereon it stands or to which it is affixed, * * * [it] shall be assessed and taxed in the name of the owner thereof." The language of these two statutes, taken together, clearly provides that property ordinarily classified as realty such as buildings and fixtures shall be classified as real property for tax purposes and shall be assessed as such to its actual owner.

The leading case in Oregon on the question is *Warm Sprgs. Lbr. Co. v. Tax Com., supra,* which holds that although the parties may choose to treat a building as personal property, nevertheless it is real property for tax purposes within the meaning of ORS 307.010 (1). The controversy in that case concerned whether property taxes paid by a lumber company on its sawmill buildings and temporary dwellings for employees which were constructed on lands belonging to the Confederated Tribes of the Warm Springs Reservation of Oregon should have been classified as real

or personal.[9] The lease agreement between the company and the Confederated Tribes provided that at the termination of the company's lease any buildings or other improvements placed upon the land by the company could be removed by the company as its separate property. The court held that because the buildings were erected upon land they were real property within the meaning of ORS 307.010 (1) and not personal property as defined in ORS 307.020 (2) and (3).

The court stated at pages 225-226:

> "The Company argues that the parties may agree that the annexation of a chattel to the land shall not deprive it of its character as personalty and, therefore, that the buildings were properly assessed as personal property. The rule invoked is valid as between the parties. But there are numerous instances in which it does not hold good where the rights of third persons are involved. Certainly such an agreement can not control the action of the state when exercising its taxing power. * * *"

The court, in *Warm Sprgs. Lbr. Co.,* cites with approval *Trabue Pittman Corp. v. Los Angeles County,* 29 Cal2d 385, 393, 175 P2d 512, 517 (1946), where it was stated:

> "* * * It is well settled that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not. * * *"

To the same effect, see *San Diego Trust & Savings Bank v. San Diego County,* 16 Cal2d 142, 105 P2d 94 (1940). Also 51 Am Jur, *Taxation,* § 416, states:

> "Real estate, for purposes of taxation, includes

---

[9] Personal property taxes could be taken in part as an offset to the taxpayer's state excise tax. Real property taxes could not.

all land within the district by which the tax is levied, and all rights and interests in such land, and all buildings and other structures affixed to the land, even though as between the landlord and tenant they are the property of the tenant and may be removed by him at the termination of the lease."

Plaintiffs in effect contend that because their building was not originally constructed on the land where it now rests and because it is held in place only by gravity and because terms of the lease permit its removal the building is a "movable" and cannot be deemed to be "erected upon" or "affixed to" the land as required by ORS 307.010 (1).

According to Webster's Third International Dictionary 770 (1961), to "erect," as a building, means "to put up," to "cause to stand ready for use." The same dictionary defines "affix" to mean "to attach in any way," "connect with." Black's Law Dictionary 82 (4th ed, 1951) defines "affix" to mean to "attach, add to, or fasten upon, permanently, as in the case of fixtures annexed to real estate." A discussion of buildings as fixtures to real property in 35 Am Jur2d, *Fixtures,* § 78, states:

> "To be considered realty, a building need not be physically anchored to the land but may be set on skids, and may be held down by the force of gravity alone. * * *"

■ Plaintiffs' house was placed and stands upon the land for use over a period of years as a home and office. The fact it was constructed elsewhere and then moved onto the land is not controlling. The building is securely affixed to the land by its great weight, and its presence there is of a permanent nature even though plaintiffs may have the right and intention to remove it eventually. Plaintiffs' building is erected

upon and is affixed to the land whereon it stands within the meaning of ORS 307.010 (1) and ORS 308.115 (2) and thus must be taxed as real property.

The order of the Department of Revenue dismissing plaintiffs' appeal is set aside. The plaintiffs' property is deemed to be real property for purposes of ad valorem taxation, and its value as of January 1, 1970, is therefore set at $6,820 as stipulated by the parties.