Argued May 6, affirmed October 16, 1958

# WALDORF *v.* ELLIOTT
### 330 P. 2d 355

*J. R. Campbell,* John Day, argued the cause for appellant. On the briefs were Yokom & Campbell, John Day.

*Roy Kilpatrick,* Canyon City, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and ROSSMAN, LUSK, McALLISTER and SLOAN, Justices.

PERRY, C. J.

On January 7, 1956, the plaintiff and his wife and the defendant and his wife contracted for the exchange

of their properties. The plaintiff was to receive defendant's lands in Idaho; the defendant was to receive plaintiff's land in Oregon. The written contract contained no reference to the grain tanks in question. Subsequent to the making of the contract and during the period in which defendant was permitted by contract to stay on the Idaho land, he sold five metal grain tanks located on the land he had sold to the plaintiff, and the purchasers thereof removed them from the land. Plaintiff, learning of the sales, brought this action in conversion, alleging the metal grain tanks as buildings on the land were part of the real property that passed to plaintiff under the contract even though not specifically mentioned therein.

The plaintiff recovered in the trial court and the defendant appeals.

There is virtually no dispute regarding the character of the grain tanks. The tanks were purchased in 1953 and 1954 for use in a feeding operation conducted by defendant. When purchased, the granaries were in a "knocked down" condition, packaged and marked for erection. Apparently neither special tools nor special engineering ability was required in order to construct a tank, and defendant completed each one with little assistance. The cylindrical tanks are eleven feet by fourteen feet, have a capacity of 1350 bushels and are topped by conical roofs. In each area where a tank was to be placed the defendant first prepared the ground by constructing a frame of 2 by 6's and then filled the frame with sand and gravel. This acted as drainage for the granary. The constructed tanks were then placed on top of the sand and gravel, in no way resting upon the wooden frame. The testimony indicates that the granaries were not guyed to the ground but were held in place by gravity. If completely

empty, a measure of dirt was required as ballast to insure that a tank would not be overturned by the wind. Otherwise, the tanks were stationary and there is no evidence that any of the tanks had been moved around or off of defendant's land prior to his sale of them to various purchasers.

The question presented by the above facts is simply stated: Were the grain tanks personal property or were they fixtures upon defendant's land so as to pass with sale of the land?

Application of the law of fixtures to a given case has traditionally proven to be difficult. However, as we view this matter, the trial court must be affirmed.

■ Defendant has set forth two assignments of error. One of them complains of the trial court's failure to allow defendant's motion for non-suit at the conclusion of plaintiff's case. In substance, defendant urges that the evidence in the record totally fails to prove that the grain tanks were in fact fixtures and part of the real property. Defendant's brief on this assignment violates Rule 16 of the Rules of this Court in that it fails to set out the motion for non-suit haec verba. Even though such violation would give us justification for refusing to consider the assignment, we will dwell briefly on it.

■ The grain tanks or granaries were buildings upon defendant's land. True, they could be moved around more easily than a farmhouse, a silo or a barn, but they were buildings, nevertheless. The structures in question were of imposing size, if not weight, and to one observing the land would give every indication of being permanent. The fact that the tanks came in a "knocked down" condition affects their character little, especially in this age of prefabrication when great and permanent edifices are constructed literally out of the

package. "As a general rule, a building on land is considered as part of the realty, or, at least, it is so presumed; and the burden of proof is upon the party who claims that it is personal property to show that it retains that character." 22 Am Jur 778, Fixtures § 63. See, also, *Metropolitan Life Ins. Co. v. Kimball*, 163 Or 31, 94 P2d 1101. Thus, the fact that the properties in question were buildings is of itself sufficient evidence that they were affixed to and became part of the realty to enable plaintiff to overcome defendant's motion for non-suit.

■ The other assignment of error is directed at the trial court's general findings upon which a judgment for the plaintiff was rendered. Essentially the assignment says: the trial court erred when it decided the grain tanks were part of the realty. Plaintiff has urged in his answering brief that defendant's assignment is nothing more than a plea to this Court to re-determine issues of fact already decided at law by the trial court sitting without a jury, and that this Court is powerless to find otherwise by virtue of Article VII of the Oregon Constitution. However, the problem of whether an article is or is not a fixture is by nature a mixed question of law and fact and as such is susceptible to review by this Court. All the "facts" in the case have been virtually admitted. We could not, even if so inclined, change the trial court's determination thereof. But we can in any case correct any mis-application of the law to the facts.

As heretofore indicated, the trial court correctly decided the granaries were a part of the realty. Cases are legion which cite and apply the rule of *Teaff v. Hewitt*, 1 Ohio St 511, 59 Am Dec 634, pertaining to fixtures. The three tests formulated in that early case and applied in numerous cases in this state *(Blake-*

*McFall Co. v. Wilson,* 98 Or 626, 193 P 902, 14 ALR 1275; *Dunn v. Assets Realization Co.,* 141 Or 298, 16 P2d 370, 17 P2d 1118) are (1) annexation, (2) adaptation, and (3) intention. "These, used as a general guide to be modified by the particular circumstances in each case, constitute a fairly accurate method. The tendency found in modern decisions is to stress the third test—that of intention—making it controlling where there is doubt as to the effect of the two others." *Dunn v. Assets Realization Co.,* supra, at 301.

Modern authority, therefore, has minimized the importance of the method by which the article is attached or annexed to the realty. It is still of significance, but, unlike early decisions at the common law, it is no longer necessarily a controlling factor. The facts here are that each granary rested upon sand and gravel contained in a wooden frame. The granary was neither spiked nor guyed to the ground, but remained in fixed position by dint of its own weight. It could be moved off of the realty with little or no damage to the property. When the grain tank was full it was permanent, however. Heavy and permanent additions to a freehold have been regarded as fixtures although not actually annexed to the realty and held in place only by the force of gravity. *Planter's Bank v. Lummus Cotton Gin Co.,* 132 SC 16, 128 SE 876, 41 ALR 592. There is no reason why one object should not be deemed a fixture merely because it is heavy and requires no attachment when a lighter object can be said to have passed the test of annexation because its lightness requires some sort of device to attach it to the realty. The method of attachment does, of course, in some cases conclusively establish the article as part of the realty. The method of attachment, however, does not ever conclusively establish that certain articles

are not a part of the realty although the attachment thereof may go a long way towards establishment of intention.

Defendant argues that the articles in question fail to pass the adaptation test, relying on *Barber, Trustee v. Henry et al.*, 197 Or 172, 252 P2d 802. In that case it was held that the contemplated use of certain "islands" to be used in a supermarket did not necessarily fix their character as permanent fixtures annexed to the realty. We detract from nothing which was said in that case. We also agree here that the use of the grain tanks did not necessarily fix their character as permanent fixtures, but neither did their use conclusively fix their character as personalty, as defendant would have us hold. Just as in the first test, "annexation," there is enough adaptation of the grain tanks to the land to make even more controlling the question of intention, for there can be no question that the buildings were essential and well-suited to the purposes for which they were constructed and were appropriate to the land upon which they rested.

Since there is a doubt as to the effect of the first two tests, we turn to the question of intention and find that intention is to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the construction and mode of annexation, and the purposes and use for which the annexation has been made. *Blake-McFall Co. v. Wilson*, supra. Several of these we have touched upon while discussing annexation and adaptation. Important, therefore, is the relationship and situation of the party making the annexation. When additions are made to land by the owner, the purpose is usually to enhance the value and to be permanent. *Roseburg Nat. Bank v. Camp*, 89 Or 67, 77, 173 P 313. Defendant was the

owner of the property when be bought and installed the granaries in question. There is no evidence that the granaries had ever been moved or considered as anything but permanent additions to defendant's farm. It is the intention of a person in annexing an article to realty at the time of the annexation to make it a permanent accession to the land and not the intention of parties at the time of the sale, which determines as between buyer and seller whether such article was a fixture. *Bastas v. McCurdy,* (Mo App) 266 SW2d 49. See, also, *Cornell College v. Crain,* 211 Iowa 1343, 235 NW 731.

While it may be said the grain tanks could be removed from the premises without great difficulty, we have no doubt but that they were intended to be a permanent part of the premises.

The judgment is affirmed.

Mr. Justice McAllister concurs in the result.