## IN THE OREGON TAX COURT

### BYLUND,

v.

### DEPARTMENT OF REVENUE, TELEPROMPTER CORPORATION,
*Intervenor*
(TC 1297)

Dana A. Anderson, Assistant County Counsel for Lane County, Eugene, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Dennis W. Percell, Luvaas, Cobb, Richards & Fraser, P.C., Eugene, represented intervenor.

Decision for defendant and intervenor rendered May 18, 1981.

## CARLISLE B. ROBERTS, Judge.

The Director of Assessment and Taxation for Lane County, Oregon, appealed from the Department of Revenue's Order No. VL 78-668, dated November 22, 1978, which held that the intervenor in this suit, Teleprompter Corporation, was not liable to the county for real or personal ad valorem property taxes on certain cable television "housedrops" utilized in Teleprompter's business. The order cancelled the 1977-1978 property tax assessment imposed upon the housedrops and required the county to amend the tax roll and to refund any excess taxes which may have been paid on account of the subject property.

The intervenor, Teleprompter Corporation, owns and operates a cable television system, pursuant to a franchise issued by Lane County. The intervenor corporation provides master television antennas and then transmits signals received therefrom through a system of cables carried on utility company poles to the homes of subscribers to their service. At the terminal points ("tap-off points"), a cable, suspended from a utility pole's crossarm, is carried to the subscriber's home in much the same fashion as the usual telephone or electrical connection. (About 25 percent of the installations involve underground cable from a tap-off point to the subscriber's home or apartments.) The cable is secured to the side of the subscriber's building by clamps, screws, bolts or staples. When new construction affords an opportunity, the interior work is concealed in the manner of inside electrical wiring. Within the home, the cable runs to one or more wall outlets at locations determined by the subscriber, and is connected to the television set or sets.

The portion of the system extending from the utility pole and into the home is known as a "housedrop." For each housedrop, the intervenor makes a charge for the installation, with an additional charge for each additional outlet inside the building; thereafter, subscribers are charged on a monthly basis for service.

The intervenor made no claim of ownership to, or control over, the housedrop. Service might be discontinued at any time at the will of the subscriber or by the intervenor for lack of payment. If service was discontinued, the system would simply be disconnected at the utility pole; nothing was removed. If the service was discontinued and then resumed by a different subscriber, the housedrop was reconnected at the pole and a small charge for the "reconnection" was made. Upon discontinuance of the service, the intervenor did not remove any part of the wiring or equipment except upon special request of the owner or subscriber. The intervenor recognized the laws of trespass and its agents entered the customers' premises only with permission. (In its group of 50,000 subscribers, removal was requested at the rate of approximately ten or twelve per year.) Evidence was presented that a subscription contract was the only written agreement between intervenor and its subscribers and that the contract contained no mention of ownership, control or final disposition of the housedrop. However, pursuant to a requirement in its franchise and for good public relations, the intervenor did maintain and repair the housedrops without charge in order to maintain the quality of the service.

The material and labor costs for the original installation of the housedrops were carried on intervenor's books as capital assets and were deducted from its income for federal income tax purposes as depreciation. The cost of materials and labor to repair or replace the housedrops was deducted on intervenor's income tax returns as an expense.

For a number of years, the intervenor's housedrop installations have been carried upon the books of the county assessor as personal property and taxes have been paid thereon. Several other cable television operators in Lane County, with a total of approximately 15,000 customers, have been assessed and taxed in the same manner, apparently without protest.

The intervenor, in its successful appeal to the Department of Revenue, argued that a cable television housedrop becomes a part of the real property to which it is attached and is therefore assessable to the owners of the real property as a fixture. Plaintiff's Brief, at 1, states to the contrary:

"* * * Plaintiff contends the subject property remained the

personal property of intervenor upon installation and was taxable as such, * * *."

The problem of determining whether property retains its character as personal property or loses its separate identity and becomes a "fixture" is an old one and frequently presented. For purposes of taxation, definitions of real property and personal property in the revenue and taxation laws of the state control, whether they conform to definitions used for other purposes or not. *Trabue Pittman Corp. v. Los Angeles County,* 29 Cal2d 385, 175 P2d 512 (1946). There are Oregon statutes defining "real property" and "personal property." ORS 307.020 states:

> "(3) 'Tangible personal property' means and includes all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment."

Clearly, the television cable housedrops, once installed, appear not to be within the criteria for "tangible personal property." ORS 307.010 defines "real property":

> "(1) 'Land,' 'real estate' and 'real property' include the land itself, above or under water; all buildings, structures, improvements, machinery, equipment or *fixtures* erected upon, under, above or *affixed* to the same; * * *." (Emphasis supplied.)

All parties agree that a three-prong test, that of degree of annexation, nature of adaptation and intention, must be utilized in determining whether particular property retains its character as personal property or loses that separate character and becomes a fixture upon its attachment to real property. This rule in *Teaff v. Hewitt,* 1 Ohio St 511 (59 Am Dec 634), a leading case on the law of fixtures, has long been followed in Oregon (as well as California and Washington and many other jurisdictions). *Marsh v. Boring Furs, Inc.,* 275 Or 579, 581, 551 P2d 1053, 1054 (1976); *Dunn v. Assets Realization Co.,* 141 Or 298, 301, 16 P2d 370, 371, *rehearing denied,* 17 P2d 1118 (1933); *Roseburg Nat. Bank v. Camp.,* 89 Or 67, 74, 173 P 313, 315 (1918). In the *Roseburg* case, the conclusion was reached that there could be no one test by which to determine in all cases whether the chattel had

become a part of the freehold, but that it required the united application of the following test:

"(1)   Real or constructive annexation of the article in question to the realty.

"(2)   Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

"(3)   The intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made." *Roseburg Nat. Bank v. Camp.,* supra, at 74.

■        This court finds that the first two requirements set out above have been met. The tendency found in modern decisions is to stress the third test—that of intention—making it controlling where there is doubt as to the effect of the two others. This emphasis on "intent" was followed by *Eliott et ux v. Tallmadge,* 207 Or 428, 297 P2d 310 (1956), and by *Highway Com. v. Feves et al,* 228 Or 273, 365 P2d 97 (1961).

The importance of the element of intention was refined when the court found that it is the intention of the affixer at the time of the attachment that controls and not the intent of the parties at the time of sale. *Waldorf v. Elliott,* 214 Or 437, 444, 330 P2d 355, 358 (1958), 39 Or L Rev 54 (1959).

As stated in Plaintiff's Brief, at 3:

"Serious questions of the intervenor's objective intent as to ownership of the subject housedrops are evident from the following list, which suggests some 'secret intent or mental reservation' (in the words of the cases cited above), rather than an objective intent to abandon housedrops upon installation: * * *."

Plaintiff gathers the secret intent from the intervenor's lack of a formal contract with the subscriber, except as to service charges; the failure of the intervenor to advise the subscriber in any manner as to the property interests in the housedrop; the failure of the intervenor to object to the assessment of personal property taxes in the past; the use of a transformer imprinted with "Property of Teleprompter Corporation" stamped thereon; intervenor's discouragement of property

owners who wish to remove the exterior part of the housedrop, rather than disconnecting at the pole; hearsay evidence (rejected by the court) of telephone conversations with two office girls who indicated that the housedrops belong to Teleprompter; testimony of the intervenor, acknowledging the cable television business could not operate without housedrops; plaintiff's interpretation of intervenor's franchise with the county, allegedly manifesting intervenor's "objective intent not to abandon housedrops"; testimony of intervenor allegedly confirming that, even without the franchise (which was not effective until October 1978), intervenor felt a responsibility to maintain and remove housedrops at the homeowners request, at the expense of intervenor; and, most importantly, intervenor's treatment of housedrops as an asset for accounting purposes, taking depreciation thereon for income tax purposes.

■　　　Plaintiff fails to adhere to the rule which it has announced on the same page 3 of its brief: "Further, the intent must be viewed objectively. *Highway Commission v. Feves,* 228 Or 273, 365 P2d 97 (1961). See also, *Highway Commission v. Empire,* 17 Or App 616, 523 P2d 584 (1974)." In searching for a "secret intent or mental reservation," many of the elements listed by plaintiff as reasons for its conclusion are highly subjective. But the "intention" which we are seeking must be that of the party making the annexation (in this instance, Teleprompter Corporation). *Waldorf v. Elliott,* 214 Or 437, 330 P2d 355 (1958); *Far West v. Proaps,* 43 Or App 881, 885, 604 P2d 452, 454 (1979); *Highway Comm. v. Empire Building, supra; Dunn v. Assets Realization Co., supra.* As stated by Mr. Justice Lusk in *Highway Com. v. Feves et al, supra,* at 277-278:

> "The intention with which a chattel is annexed to the realty has been said to be of controlling importance, at least where there is doubt as to the effect of the other two tests. [Citations omitted.] The intention of which the courts speak, however, is an objective one. It is not, as we said in the *Dunn* case, a question of 'secret plans or mental reservations.' What controls is 'the nature of the article, the relation of the party making or maintaining the annexation, the policy of the law in relation thereto, the structure and mode of annexation, and the purpose and use for which it is made'. *First State etc. Bank v. Oliver,* supra, 101 Or [42] at 49, and cases there cited.
> * * *"

In this area of difficulty, it is always wise to recall

that whether an item is a fixture is a mixed question of law and fact and susceptible to review by the Oregon Supreme Court. *Waldorf v. Elliott, supra.* That case also points out that the method of attachment is important but is not controlling.

The problem engendered in this case undoubtedly grows out of the impression made by Teleprompter Corporation that it handled the property questions relating to the housedrops ambiguously. Its service contracts with the customers have not adverted to the property aspects. Its principle has been one of economic benefits to the company. It has treated the housedrops as company property for income tax purposes (taking depreciation) but expects the court to find them to be fixtures and, as such, real property improvements, taxable to the owner. The salvage value to Teleprompter of the housedrop is too small to pay the cost of removal and so, unless specifically requested by the owner, the property is abandoned on termination of the subscription for services, undoubtedly with the hope that a successor owner will make use of the existing installation. The fee for "reconnection" is smaller than the charge for original installation. In the case of installation in rental properties, particularly, it is advantageous to Teleprompter to leave the drop in place.

The court finds that the housedrops under consideration here are fixtures, the property of the owner of the real property to which the fixtures are annexed, and that the intention of the intervenor is that those fixtures shall remain in place as long as possible.[1]

It is recognized that fixtures, easily removable, have been held taxable as personalty. *See Newport Illuminating Company v. Tax Assessor,* 36 A 426 (RI 1896), cited by intervenor. This has been followed in *Oregon First National Bank v. Marion County,* 169 Or 595, 130 P2d 9 (1942), as to trade fixtures which can be removed from the leased premises without any substantial injury to the building (but this was the case of a national bank which, under federal law, was

---

[1] The authorities recognize that the use of the value of the housedrops on Teleprompter's books and tax returns as a depreciable asset or as deductible maintenance for income tax purposes is not controlling in this suit. Different tax treatment of a given item is not necessarily illegal. *See Miller,* 68 TC 767 (1977); *Weiss v. Wiener,* 279 US 333, 49 S Ct 337, 73 L Ed 721 (1929); *Helvering v. Lazarus,* 308 US 252, 60 S Ct 209, 84 L Ed 226 (1939); 4 *Mertens Law of Federal Income Taxation* § 23.06.

taxable by the state only as to its "realty"). But the fact that a fixture is easily removable does not necessarily negative the element of permanence. *Highway Comm. v. Empire Building, supra, Waldorf v. Elliott, supra; Moore & Paulson v. Dept. of Rev.,* 4 OTR 573 (1971); *Trabue Pittman Corp. v. Los Angeles County, supra.* In the present instance, the removal of the housedrops, both exterior and interior, would generally cause some damage to the property, requiring minimal repair for the exterior and quite possibly substantial repairs for the interior. As a practical matter, the interior material would be abandoned.[2]

■ Under the facts found in the subject suit, the court holds that ORS 307.010, defining "fixtures" as part of the real property, must be followed by the county assessor both as to overhead and underground installations and both as to exterior and interior portions of the housedrop. The county assessor must follow the tax statutes regarding fixtures in the division of property between personal property and real property on the assessment roll. The assessor's choice cannot be suggested by expediency *(First National Bank v. Marion County, supra),* and an agreement of the parties as to the nature of the installation is not binding upon the assessor *(Shields v. Dept. of Rev.,* 266 Or 461, 513 P2d 784 (1973); *Warm Springs Lbr. Co. v. Tax Com.,* 217 Or 219, 225, 342 P2d 143, 146 (1959); *Trabue Pittman Corp. v. Los Angeles County, supra).*

This is not to suggest that the housedrops are not taxable. Argument was made by the plaintiff before the court that expediency calls for the taxation of the subject property as personal property because of the substantial amounts which are then taxable to responsible taxpayers, as opposed to the small amounts which will be attributable to individual households and which may be overlooked or disregarded by the county's real property and residential appraisers.

The county assessor has a duty to tax the property in

---

[2] The court decisions in this area are rare at this time. In *Rollins Cable-Vue, Inc. v. McMahon,* 361 A2d 243, 247 (Del 1976), it was held that television cable annexed to another's poles (located in the streets or alleys) by lease agreements, where owners of the poles contractually could require removal, was not equipment annexed with sufficient permanence to be "fixtures" and therefore could not be deemed real property for assessment purposes. This suit did not mention housedrops.

any event, since it is not exempt. ORS chapter 308. There is no question that the fixture adds value to the typical residence, in the same way that a good television aerial, in reasonable condition, does. The amount of value can readily be determined and should, as a matter of course, be included in each individual appraisal as many other fixtures are regularly noted (fireplace, bath fixtures, kitchen built-ins, and the like).

This is apparently a case of first impression in Oregon but the court is partially supported by a California decision, *Tele-Vue Systems v. County of Contra Costa,* 25 Cal App3d 340, 101 Cal Rptr 789 (1972), and is fully supported by an administrative decision in the *State of Washington, Harley H. Hoppe, King County Assessor v. Televue Systems, Inc.,* Docket Nos. 13386-13390, Board of Tax Appeals, State of Washington, July 20, 1976.[3] The defendant's Order No. VL 78-668 is affirmed. The intervenor is entitled to its costs.

---

[3] In the California case (with the facts closely resembling those in the present suit), the lower court found the housedrops to be personal property taxable to the annexor. On appeal, the cable company stipulated the exterior part of the housedrop to be taxable to it but argued that the interior portion was taxable as realty to the subscriber. The California Court of Appeals sustained the plaintiff and reversed the trial court as to the taxation of the interior cable. The Oregon Tax Court finds the entire housedrop is real property under ORS 307.010(1).