# IN THE OREGON TAX COURT

## SEVEN-UP BOTTLING CO. OF SALEM, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 2398)

David A. Rhoten, Salem, represented plaintiff.

Joseph A. Laronge, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered March 13, 1987.

## CARL N. BYERS, Judge.

Plaintiff is the owner of certain machinery and equipment used in its business of bottling and distributing soft drinks. Plaintiff's property was assessed for the 1984-85 tax year as real property by the Marion County Assessor. Defendant upheld the assessor's characterization of the machinery and equipment and plaintiff appeals to this court seeking a determination that the property is personal property, not real property.[1]

The property in question consists of the machinery and equipment one would expect to find in a soft drink bottling plant. Numerous conveyors connect the machines used for washing, filling, capping, labeling and packaging the bottles. There are fluid tanks, air compressors, heaters, water treatment and a palletizing machine. All of these are integrated and interrelated by pipes, wiring and conveyors as is necessary to process and produce plaintiff's product. The court viewed the premises to enable it to better understand the evidence submitted in this case.

Much of the testimony related to how the equipment was attached to the buildings or to other equipment. Some of the equipment, such as the large bottle washer, the palletizer and some conveyors is not attached to the building but merely rest in place by virtue of its weight. However, these items are attached to other equipment such as conveyors, pipes or wiring. Some equipment is attached to the building by bolts or screws, but, as plaintiff points out, it could be removed without significant damage to the building. In some areas the building has been modified to accommodate the conveyors, pipes and heating ducts which pass through the walls or the roof.

The single issue before the court is whether plaintiff's machinery and equipment is "movable" within the meaning of ORS 307.020(3).

Plaintiff makes much of the fact that the building in

---

[1] Plaintiff's counsel explained that while both real and personal property are taxable, real property values are generally trended up with inflation while personal property values are decreased in accordance with certain set depreciation schedules. If this is true, it certainly raises questions as to the accuracy of the assessment in one of the two directions.

which the equipment is housed is not owned by plaintiff and is readily adaptable to other light industrial or commercial uses. For the reasons set forth below, ownership of the building by another party has little bearing on the determination of the issue at hand.[2]

Resolution of the issue in this case is aided by the fact that the Court can look to two statutes rather than just one. ORS 307.010(1) defines real property while ORS 307.020(3) defines personal property. The issue posed in this case requires the court to draw the line between the two definitions for purposes of administering the tax statutes.

■ ■   The statutory definitions with which we are concerned are as follows:

> " 'Land,' 'real estate' and 'real property' include the land itself, above or under water, all buildings, structures, improvements, machinery, equipment or fixtures erected upon, under, above or affixed to the same; * * *." (ORS 307.010(1).)

> " 'Tangible personal property' means and includes all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment." (ORS 307.020(3).)[3]

■   The first rule of the search in statutory construction is to focus on the statute itself. *Whipple v. Howser,* 291 Or 475, 632 P2d 782 (1981). The court is expressly admonished by the legislature in ORS 174.010 not to add to or subtract from a statute but "simply to ascertain and declare what is, in terms or in substance, contained therein." In interpreting this statutory direction, the Oregon Supreme Court has said:

> "We ought never to import into a statute words which are not to be found there, unless from a careful consideration of the entire statute it be ascertained that to import such words is necessary to give effect to the obvious and plain intention and meaning of the legislature. Under the directions of the statute

---

[2] Even if it did in this case it is questionable whether it should be given much weight since the shareholders of plaintiff are the owners of the building.

[3] Both parties have alluded to the legislative history of the statute defining tangible personal property, pointing out that the 1939 amendment which added "all machinery and equipment used in the manufacture of raw or partially manufactured products" was deleted 20 years later. While this history was interesting, it is, as plaintiff points out, not very helpful.

last referred to [ORS 174.010] we are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it." *Barrett et al. v. Union Bridge Co.*, 117 Or 566, 570, 245 P 308, 45 ALR 527 (1926), quoted in *Whipple v. Howser, supra,* at 480.

■ Having thus established a line of sight, one final admonition with regard to statutory construction is appropriate.

"In construing a statute, words of common use are to be taken in their natural and obvious meaning and significance. That sense of the word is to be adopted which best harmonizes with the context and promotes the policy and objectives of the legislation." *State ex rel Nilsen v. Ore. Motor Ass'n,* 248 Or 133, 137, 432 P2d 512 (1967). *See also Canteen Company of Oregon v. Dept. of Rev.,* 8 OTR 450 (1980).

In beginning its search, the court recognizes that the term "movable" is broad enough in the ordinary sense to cover a wide area. Somewhere in that vast semantic plain between the immovable mountain and the constantly moving ocean is to be found the line between real and personal property. The purpose of the legislature in crafting its definitions was to distinguish the two types of property for purposes of administering the laws of property taxation. This suggests that a simple rule, one easy to understand and to apply, is desirable and intended by the legislature.

Defendant, in the course of administering the property tax laws, has promulgated a rule which more specifically defines real property with regard to machinery and equipment. OAR 150-307.010(1)(2)(b). (1) and (2) define "erected upon" and "affixed" as follows:

" 'Erected upon' means being permanently situated in one location on real property and adapted to use in the place. For example, a heavy piece of machinery or equipment is set upon a foundation without being fastened thereto, but is an integral part of the function or design of the facility.

" 'Affixed' means being securely annexed to the real property. For example, items attached by bolts, screws, nails or built into the structure are securely annexed; items attached by electrical connections are not securely annexed."

Plaintiff contends that this rule is "an unconstitutional expansion" of the statute. (Plaintiff's Memorandum, at 18.) Plaintiff asserts that "erected" is synonymous with "built" and that if the subject property falls within the definition of ORS 307.010 it is because it is "annexed,"[4] not "erected upon."

Upon examination, the court agrees that the administrative rule goes beyond the statute, but not necessarily in the direction plaintiff claims. Plaintiff claims that the rule is too broad, whereas in the court's view it may be too narrow.

■ Defendant's administrative rule appears to have adopted to some extent the common law "three-prong test" of annexation, adaptation and intention. *Waldorf v. Elliott,* 214 Or 437, 442, 330 P2d 355 (1958). It should be noted that the test is usually applied in the "law of fixtures." *Highway Com. v. Feves et al,* 228 Or 273, 365 P2d 97 (1961). That context is to be distinguished from the determination of real and personal property for ad valorem tax purposes.

ORS 307.010(1) uses the terms "affixed to," and "erected upon." As can be seen from the regulations quoted above, defendant has interpreted the word "affixed" to mean "securely annexed." While the term affixed in and of itself connotes an element of permanence, the court is not sure that it also connotes "securely." In fact, large items may be found constructively "affixed" to the land or buildings merely by virtue of their weight and size. *Waldorf v. Elliott,* 214 Or 437, 330 P2d 355 (1958).

Likewise, the term "erected upon" does indeed, as plaintiff contends, connote the idea of assembling, building or constructing. The regulation's definition of erected upon contains two elements: (1) That the item be "permanently situated in one location," and (2) that it be "adapted to use in the place." While these elements may be consistent with the concept of being built or constructed upon, they do not constitute a complete definition. Many large machines are brought on

---

[4] The statute uses the term "affixed," not "annexed." While there may be some overlapping in meaning and general usage, it would appear that the term "affixed" connotes being physically attached while "annexed" is a broader term which implies an addition to something without the particular means by which it is added. *See* Webster's Third New International Dictionary 87 (1961).

site in pieces and assembled or "erected." Even large machines which are brought on site as a unit often require special foundations, modification of the building's electrical panels and switches, special wiring, plumbing, venting, access ramps, openings and other forms of construction. In this sense, then, such machines are "erected upon" the real property.

To the extent that the regulation requires more than what the common ordinary words convey, it goes beyond the statute. For example, in subparagraph (4) of OAR 150-307.010(1)(2), the regulation indicates that if, after applying the tests of "annexation and adaptability" there is still doubt, then it is appropriate to look to the "intention of the parties." Again, these are the common law tests relating to law of fixtures. The statute does not use these terms. The statute does not say "affixed with intent" or "affixed and adapted." It simply says "affixed." There is no indication in the statute itself that the legislature intended application of the common law test.

Not only is the common law test not required by the statute, it is generally inconsistent with the statute. Ad valorem tax laws are intended to promote uniformity of taxation and reasonable ease of administration. These objectives cannot be met if the assessor must rely upon the common law test.

> "[U]niformity of taxation cannot be attained unless a uniform classification of real and personal property is established. Just as assessors are not bound by private agreements, they should not be frustrated or hindered in performing their vital function by the necessity of ferreting out the often undisclosed and secret intentions of lessors and lessees relative to the terms of a lease. For the most part, assessors must be allowed to act on the basis of outward appearances." *Trabue Pittman Corp. v. Los Angeles County,* 29 Cal 2d 385, 175 P2d 512, 517 (1946).

This view is consistent with the holding in *Warm Springs Lbr. Co. v. Tax Com.,* 217 Or 219, 225, 342 P2d 143 (1959), where the court held that an agreement between parties "cannot control the action of the state when exercising its taxing power." Citing *Trabue Pittman Corp. v. County of Los Angeles, supra.* If the intent of the parties cannot control for tax purposes, how can the common law test be properly applied?

■ The court recognizes that defendant's administrative rule has been in effect for many years and is entitled to great weight.

> "[T]he interpretation of an ambiguous statute by an agency charged with its administration is entitled to great weight, although it is not binding on the courts." *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740 (1966).

■ The court also recognizes that it has previously applied the common law test in construing ORS 307.020(3). *Bylund v. Dept. of Rev.,* 9 OTR 76 (1981).[5] Nevertheless, the court now recognizes that the statute is not as narrow as might be interpreted under the common law test. For example, a machine "affixed to" a building is real property regardless of the intent of the parties or its "adaptability." To the extent that the regulation attempts to narrow the statute, it is invalid.

Returning to the issue in this case, having considered the field of meaning from the perspective of real property, it is now appropriate to view the field facing from the ocean and consider the definition of personal property. It is apparent that ORS 307.020(3) emphasizes the notion of movement or movability. Defendant correctly argues that the structure of the statute invites application of the statutory rule of construction *ejusdem generis.*

> "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Where the opposite sequence is found, i.e., specific words following general ones, the doctrine is equally applicable, and restricts application of the general term to things that are similar to those enumerated.
>
> "* * * If the general words are given their full and natural meaning, they would include the objects designated by the specific words, making the latter superfluous. If on the other hand, the series of specific words is given its full and natural meaning, the general words are partially redundant. The rule 'accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as

---

[5] In *Bylund v. Dept. of Rev.,* 9 OTR 76 (1981), this court did apply the common law "three-prong test" to determine whether TV cable drops were real or personal property. The court in that case may have been unduly influenced by the fact that the parties all agreed that the three-prong test may be used.

indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.'

"The resolution of this conflict by allowing the specific words to identify the class and by restricting the meaning of general words to things within the class is justified on the ground that had the legislature intended the general words to be used in their unrestricted sense, it would have made no mention of the particular words." 2A Sutherland Statutory Construction § 47.17 (4th ed).

Under this rule, the general terms "machinery," "tools" and "equipment" are more narrowly viewed in light of the specific types of property listed in the statute. As a general rule, the specific types of items listed in the statute are not "affixed" to anything. Consequently, they are "readily movable as opposed to apparently stationary or fixed items." OAR 150-307.020(3). In this light, machinery, tools and equipment which are nailed, bolted, screwed or glued to real property are not "movable" within the meaning of the statute.

The "bright line" sought by plaintiff distinguishing real from personal property may be substantially dimmer and less distinct than hoped for. However, the court believes that the above conclusions provide a view which facilitates administration of the tax laws. As a general rule, the assessor is not required to consider the intention of the parties or the adaptability of the property. He merely has to determine whether the property is "affixed to" or "erected upon" land or buildings. The court recognizes that under this rule there may still be some cases in which there is a question as to whether an item is real or personal property. It is difficult to conceive of a general rule which would aptly fit all the possible types of property. The one principle that abides is that the statute must be the standard.

Applying the above to the subject property, the court finds that most of the subject property is "affixed" or "erected upon" real property. Most of the equipment is bolted or screwed to the walls, ceilings or floor and attached by pipes, ducts and conduits. This equipment is not moved except when modifying the operational layout. In fact, movement of the equipment would be inconsistent with the operation and function it performs. Movement would usually result in misalignment, leaks and faulty application of the products. The very

purpose of the small bolts and screws plaintiff refers to is to prevent movement.

It seems likewise clear that the equipment in question is not "freely movable" as asserted by plaintiff. (Plaintiff's Memorandum, at 8.) "Freely movable" suggests something that, if not designed to be moved on its own wheels, rails or pontoons, could easily be placed on such means of movement and moved. What actually would be required in this case would be the disassembly of a complex arrangement of equipment. Numerous pipe fittings and connections would have to be undone, machinery, pipes and valves would have to be detached from walls, floors and ceilings and a number of holes would have to be patched or plugged in the building. By plaintiffs' own evidence, it would take approximately 20 days to remove the subject property from the building. It would not reasonably take anywhere near the time to remove a like amount of "boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles" or "farming implements" from the building. The difference between the latter types of property and the subject property is that the subject is "affixed to" or "erected upon" real estate while the latter is "readily movable."

In finding that "most" of the subject property is not personal property but real property, the court recognizes that there may be some items which are not real property. Specifically, some of the smaller tanks in the syrup room, which are not attached to the building but are free-standing, and which are not connected with plumbing connections but drained through flexible rubber hoses, are personal property. Such items are readily movable from one part of the room or plant to another. On the other hand, the large stainless steel tank, pictured in Exhibit 5, is attached by solid plumbing connections. Its weight and bulk, as well as the plumbing attachments, render it not "movable." There may be other specific property which is an exception to the court's general finding that the subject machinery and equipment is real property, not personal property. If the parties are unable to agree on such items, they may submit a list of such items to the court for specific determination before judgment is entered. Costs to neither party.