IN THE OREGON TAX COURT

COLUMBIA RIVER EGG FARM,
a partnership
*v.*
DEPARTMENT OF REVENUE
(TC 3251)

COLUMBIA RIVER EGG FARM,
a partnership
*v.*
DEPARTMENT OF REVENUE
(TC 3256)

John D. Albert, Donaldson, Albert, Tweet, Connolly, Hanna & Muniz, Salem, represented plaintiff.

Bonni C. Canary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered April 30, 1993.

**CARL N. BYERS, Judge.**

Plaintiff owns and operates a large chicken egg farm in Sherman County. Plaintiff claims that certain of its equipment is exempt from taxation under ORS 307.400 for the tax years 1989-90 through 1991-92.

The chicken cages and associated equipment in two of the three hen houses and the equipment in the processing plant are at issue. Although the words are familiar, the

property involved is a world away from the old wire cage with a light bulb, water dish and feeding tray. Now, the cages are "confinement systems" assembled in batteries 410 feet long. Each hen house measures 440 feet by 60 feet and contains six batteries of cages. The caging system is made up of individual cages, with each cage holding five to six chickens. The cages are assembled two cages wide and five tiers high. They are further connected by pipes, conveyors and wires. The eggs are moved by gravity from the cages to egg conveyors on both sides of the battery. Each tier of cages has an egg conveyor running the length of the battery. The conveyors carry the eggs to the end of the battery. There they are escalated up to a rod conveyor which carries them to the processing plant. There are also feeding troughs running the length of the battery. The troughs are filled by a traveling hopper which moves along the sides of the cages, simultaneously filling all five levels. A water system dispenses water to the cages on an automated basis through a system of pipes and tubes.

In addition to the above, conveyor belts run under each tier of cages, collecting the manure and conveying it to the end of the battery opposite the egg collector. These conveyors deposit the manure into a conveyor system set in the concrete floor of each building. That system moves the manure out of the building onto a dump truck.

The eggs entering the processing building are accumulated, washed, dried, "candled" for defects and sized by weight on a computerized machine. That machine then channels them to the proper area where they are crated, stored and shipped. The entire system is highly automated, with only two to three percent of the eggs ever being touched by human hands before the consumer purchases them.

Plaintiff claims that its caging systems, associated equipment, and processing equipment are exempt from ad valorem taxation as "inventory" under ORS 307.400. The relevant portion of that statute provides:

"(3)   As used in subsection (2) of this section, 'inventory' means the following *tangible personal property*:

"* * * * *

"(b)   Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or

the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products; * * *." ORS 307.400(3)(b) (emphasis added).

The issue in these cases is whether the subject property constitutes "tangible personal property." Tangible personal property is defined by ORS 307.020(3) as:

"[A]ll chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming implements, movable machinery, movable tools and movable equipment."

This court previously construed this statute in *Seven-Up Bottling Co. of Salem v. Dept. of Rev.*, 10 OTR 400, 404-05 (1987). That case rejected the common law test of fixtures. The court found that Oregon statutes defining real property and tangible personal property did not necessarily adopt the common law test. For example, the court found that the definition of real property includes machinery and equipment erected upon real property by "special foundations, modification of the building's electrical panels and switches, special wiring, plumbing, venting, access ramps, openings and other forms of construction." *Id.* at 405. In construing ORS 307.020(3), the court found the principle of ejusdem generis applied. Since all the items mentioned in that statute were freely movable, the court held that machinery and equipment which was not freely movable did not qualify as personal property. The court found the bottling equipment and machinery was not tangible personal property within the meaning of the statute because it was not freely movable. *Id.* at 407-08. "Movement of the equipment would be inconsistent with the operation and function it performs." *Id.* at 407.

However, plaintiff correctly points out that *Seven-Up Bottling* considered only the narrow issue of whether the machinery and equipment was "movable" within the meaning of ORS 307.020(3). Here, plaintiff focuses on the word "chattels." Plaintiff argues that "chattels" must be something other than "movables"; otherwise the language in the statute would be redundant. Plaintiff reasons that if chattels are other than movables, the common law test regarding fixtures must be applied to determine whether the nonmovable chattel is personal or real property.

In response, defendant argues that the word chattels covers animate objects which would not be included by the term movables. There is some merit to this position. Although chattels is the broader term and does include animals, another term such as "goods" does not necessarily include animals. *See, for example "Chattels," 6A Words and Phrases* 462-63. Here "movables" might encompass animals as well as inanimate objects. However, it does not appear necessary to rest the decision on such a narrow ledge.

It has long been recognized that ORS 307.400 does not follow the traditional course. For example, its definition of "inventory" is not the "usual sense of that word." *Eastern Ore. Farming Co. et al v. Dept. of Rev.*, 7 OTR 74, 78 (1977). Likewise, after examining the history of ORS 307.400, the Oregon Supreme Court in *Saunders v. Dept. of Rev.*, 300 Or 384, 390, 711 P2d 961 (1985), stated:

> "Whatever the result might be if only ORS 307.020(3) were involved, the legislative history of ORS 307.400(3) shows that the legislature, in creating the exemption, intended to exempt described personal property that generally is moved or movable in the ordinary course of business."

The court finds the subject property is not generally "moved or movable in the ordinary course of business." The evidence established that the confinement systems in some instances are bolted to the floor and in all instances are connected to the buildings with pipes, conveyors and wires. Each moving part is carefully aligned in relationship to the building. The automatic feeding system augers feed from the permanently affixed feed bins outside the building through tubes into the building where it is fed into the traveling hopper. The manure removal conveyors are carefully arranged so the manure drops into the trench where the conveyor moves it outdoors. Needless to say, the conveyors for the collection and movement of the eggs are likewise carefully aligned and coordinated. The efficiency of the equipment relies upon the automated features of its operation. Movement of the equipment is inconsistent with its intended use and would disrupt all aspects of the process.

Although the confinement systems may not be of enormous weight, certainly their bulk and shape do not admit

to easy movability. The evidence showed they must be disassembled to be moved. While this is relatively simple, it is time consuming. Plaintiff's own witness indicated that the labor intensive nature of movement is a consideration. Finally, the electrical panels, plumbing controls and connections are incorporated into the buildings. The confinement systems operate by being integrated into or with their buildings.

The same may be said of the equipment in the processing plant. There the washing system utilizes a water softener system and a boiler which are clearly affixed to and are part of the real property. When one views the piping, venting and the hard electrical lines of the conveyor system, it is clear the equipment is not movable unless it is disconnected and rendered inoperable.

In summary, the court finds that plaintiff's property is not tangible personal property within the meaning of ORS 307.020(3). Consequently, it does not qualify for exemption under ORS 307.400. Defendant's Opinion and Order Nos. 89-1372, 90-0936, 90-0937, 91-1806 and 91-1807 must be sustained. Defendant to recover its costs and disbursements.