DECISION
Plaintiffs appeal the real market value of property identified as Account M1373052 (subject property) for tax years 2007-08, 2008-09, and 2009-10. A telephone trial was held by Magistrate Jeffrey S. Mattson on October 26, 2010. Plaintiffs appeared on their own behalf. Jack W. Graff, Residential Appraisal Supervisor, appeared on behalf of Defendant. Kathy Southwick (Southwick), Appraiser II, Washington County Department of Assessment and Taxation and Adrienne Wilkes (Wilkes), Appraisal Data Analyst, Washington County Department of Assessment and Taxation, testified on behalf of Defendant.
The court admitted all offered exhibits without objection.
 I. STATEMENT OF FACTS
The subject property located in Smith Farm Estates (referred to by Plaintiffs as SFE) is described by Southwick as follows:
 "The subject is a 1985 Goldenwest, double-wide manufactured home, with exterior dimensions of 28' X 56'. The subject is a 3 bedroom, 2 bath home of approximately 1568 square feet. The home is considered to be good overall quality of construction with features typical of homes in this value range. Additionally, the home was a wood stove, heat pump, 10' X 25' wood deck, 10' X 18' deck cover, and a 440 square foot detached garage."
(Def's Ex A at 4.) Plaintiffs are appealing the subject property's real market value for three tax years as follows: *Page 2 
Tax Year 2007-08 2008-09 2009-10
Real Market Value — Tax Roll Value: $35,170 $36,480 $50,000
Real Market Value — Requested Value: $27,160 $27,160 $27,160

Defendant requested that the subject property's 2009-10 real market value be the same as the tax roll value ($50,000), referencing Southwick's comparable sales approach. (Def's Ex A.)
Plaintiffs requested "that our submitted sales of 60 manufactured homes in Washington County, EXHIBITS 1.1 1.2 on pages 5-7 of our supporting evidence, be used to show a more realistic RMV/AV trend that does not support the 43% increase in RMV/AV of our home. In fact according to the trend in the exhibit our RMV/AV should have been reduced by up to 21%." (Ptfs' Optional Comments at 1) (emphasis omitted).) Plaintiffs stated that "[t]o further emphasize this, we refer you to EXHIBITS 1.3A 1.4 on pages 8 10 of our supporting document, which shows the downward price trend of 10 sales in SFE during 2008 2009. With this decreasing trend our home RMV/AV should havedecreased by up to 38%." (Id. (emphasis in original).) Plaintiffs testified that they have been "targeted" and they conclude that "there appears to be a conspiracy" that is "dismaying" to them.
Plaintiffs testified that they object to being "taxed" on improvements identified as a "garage, deck, roof over the deck, downspouts, gutters and window awning that are not" their property. (Id. at 3.) Plaintiffs wrote that they "as tenants are under binding rental agreements * * * [and] cannot make any `Improvement' or remove any `Improvements,' on our rental space, without our Landlord's written approved." (Id.) Defendant responded:
 "1) All items purported to be double taxed appear only on the tax account of the manufactured home owners. The garages, decks, carports, storage sheds, etc. are not taxed on the real property accounts of the park owner. When units are marketed, contested items are advertised as being `included' in the transaction together with the manufactured home. At closing, consideration passes from buyer to seller only. Nothing goes to park ownership." *Page 3 
 "2) Manufactured home owners are in total control and exclusive possession of their homes until they vacate the park. The contested items are in place and provide `utility' to the homeowner only."
(Def's Ltr at 1, Dec 6, 2010.) In addition, Southwick submitted "a copy of a page titled `Real Property vs. Personal Property,' taken from the Beginning Personal Property Manual, a manual provided/published by Oregon Department of Revenue." (Def's Facsimile at 1, Oct 27, 2010.) That page discussed the "Assessment Process" for some real property items that may be assessed as personal property.
Southwick testified that she used the sales comparison approach to determine an indicated real market value of $52,850 as of January 1, 2009. (Def's Ex A at 17.) Her comparable sales were manufactured homes located in SFE like the subject property. (Id.) Southwick adjusted each comparable sale for gross living space, year built, shed/carport, fireplace, deck and heat pump. Defendant made no adjustment for date of sale to assessment date. Plaintiffs presented a comparable sales approach that was similar to Defendant's comparable sales approach. (Ptfs' Ex 3.4.) Plaintiffs made similar adjustments as Defendant plus an additional adjustment for condition. (Id.) Plaintiffs' indicated value at appraisal date was $50,000. (Id.)
 II. ANALYSIS
The issue before the court is the 2007-08, 2008-09, and 2009-10 real market value of Plaintiffs' property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing Gangle v. Dept. of Rev.,13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [1] which reads: *Page 4 
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A. Approaches of Valuation — Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2); OAR 150-308.205-(A)(2). The subject property is primarily a residential structure. Plaintiffs and Defendant relied on the comparable sales approach. Plaintiffs presented a "trend" approach. Neither party considered the cost approach or the income approach.
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corp andMcKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute, TheAppraisal of Real Estate 335 (12th ed 2001). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."
Plaintiffs presented a comparable sales approach. (Ptfs' Ex 3.4.) Plaintiffs' approach was identical to Defendant's comparable sale approach, making the same value adjustment for size. *Page 5 
Plaintiffs presented no evidence that they are certified appraisers.[2] Plaintiffs and Defendant made adjustments for carport/shed, heat pump, and deck. The values of the Plaintiffs' carport/shed, deck, and heat pump adjustments were, according to Plaintiffs, "from the respective Appraisal Records." The value of Plaintiffs' adjustments were more than Defendant's, resulting in a slightly lower indicated value, $50,000, for the subject property. (Ptfs' Ex 3.4.) Plaintiffs and Defendant made no adjustment for time, specifically date of sale to assessment date. It is unclear if either Plaintiffs or Defendant verified any of the market transactions to "ensure they reflect arms-length market transactions." OAR 150-308.205-(A)(2)(c). Plaintiffs' indicated value matches the real market value and assessed value, $50,000, determined by the Washington County Board of Property Tax Appeals and does not persuade the court that it should order Plaintiffs' requested reduction in the subject property's real market value.
Plaintiffs gave most weight to a "trend" developed from sales of various manufactured homes located in Washington County. Many of the selected sales occurred in other manufactured home parks that may or may not be comparable to the subject property's park. Some of those sales occurred in Plaintiffs' neighborhood; others did not. Plaintiffs made no adjustment for location, even though they acknowledge that some parks create better neighborhoods than other parks. Trending is a mass appraisal approach and is statutorily allowed for valuing a property with a prior year adjudicated value. The subject property's real market value for the 2008-09 tax year was not an adjudicated value. Trending is not one of the three acceptable approaches for valuing an individual property. *Page 6 
Plaintiffs allege that they should not be assessed property taxes on various property items, stating that they are not the owners and the items are real property, not personal property. "Personal property may be assessed in the name of the owner or of any person having possession or control thereof." ORS 308.105(2). If the items are personal property, Plaintiffs could be taxed on the values because they have "possession or control thereof" and they admit that they "have the use" of the items. (Id.; Ptfs' Optional Comments at 4.)
Plaintiffs' second allegation is that the items are real property, rather than personal property. The general rule for classify property as real or personal was determined by this court to be a test of whether the item is "affixed to" or "erected upon" land or buildings or is "moveable." See Seven-Up Bottling Co v. Dept of Rev.,10 OTR 400 (1987). Plaintiffs presented no evidence showing whether the items are "affixed to" or "erected upon" land or buildings or whether the items are "moveable." (Id.) Defendant's representatives testified that Defendant concludes that, because the "contested items are advertised as being `included' in the [sale] transaction with the manufactured home * * * [and] consideration passes from buyer to seller only[,]" the property is classified as personal and taxed to the manufactured home owner. (Def's Ltr, Dec 6, 2010.) Plaintiffs found numerous property tax records confirming that Defendant does assess property tax to the manufactured home owner for sheds and similar property items.
With respect to whether or not Plaintiffs should be taxed on the real market value of those items, Defendant presented evidence showing that it consistently taxes the manufactured home owner using those kinds of property that it classifies as personal property. Defendant states that it coordinates classification "so that assessable property is not overlooked or double assessed." (Def's facsimile at 2, Oct 27, 2010.) Plaintiffs failed to submit any evidence supporting their *Page 7 
allegation that the manufactured home park owner is being taxed on that personal property item. There is adequate evidence that Plaintiffs are being taxed on their use of those items. There was no evidence supporting a request for a reduction, other than total removal of the disputed items, in real market value of those items.
A review of the parties' evidence is governed by statute. "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon theparty seeking affirmative relief." ORS 305.427 (2009) (emphasis added). Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. of Rev.,4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position." Poddar v. Dept. ofRev., 18 OTR 324, 332 (2005) (quoting Woods v. Dept. of Rev.,16 OTR 56, 59 (2002) (citation omitted)). Plaintiffs have not established "by a preponderance of the evidence" their requested real market value as of the date of assessment.
B. Tax years 2007-08 and 2008-09.
For tax years 2007-08 and 2008-09, the parties agree that Plaintiff failed to file a timely appeal with the board of property tax appeals (BOPTA). The Oregon legislature has enacted laws that guide a taxpayer challenging the real market value assigned to their properties. The first step in the appeal process is to file a petition with BOPTA. ORS 309.100(1). In limited circumstances, the Tax Court can consider an appeal to reduce real market value even though a taxpayer fails to follow the statutorily prescribed process. Under ORS 305.288, the court can reduce the value of the property if there is either (1) an allegation of an error in value of at least *Page 8 
20 percent, or (2) good and sufficient cause for the taxpayer's failure to follow the prescribed appeal process.
ORS 305.288(1) provides, in pertinent part, that:
 "(1) The tax court shall order a change * * * applicable to a separate assessment of property to the assessment and tax roll for the current tax year * * * if all of the following conditions exist:
 "(a) For the tax year to which the change * * * is applicable, the property was used * * * primarily as a dwelling * * *.
 "(b) The change * * * requested is a change in value for the property for the tax year and it is asserted in the request and determined by the tax court that the difference between the real market value of the property for the tax year and the real market value on the assessment and tax roll for the tax year is equal to or greater than 20 percent."
Plaintiffs submitted no evidence of real market value. The court is unable to determine if the 20 percent test has been met.
ORS 305.288(3), which grants the court authority to review untimely appeals when the taxpayer establishes "good and sufficient cause" for not timely pursuing an appeal with BOPTA, provides that:
 "The tax court may order a change * * *applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if, for the year to which the change * * * is applicable the assessor or taxpayer has no statutory right of appeal remaining and the tax court determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal."
The parties agree that Plaintiff has no statutory right of appeal remaining.
The term "good and sufficient cause" is defined in ORS 305.288(5)(b) as follows:
 "`Good and sufficient cause':
 "(A) Means an extraordinary circumstance that is beyond the control of the taxpayer, or the taxpayer's agent or representative, and that causes the taxpayer, agent or representative to fail to pursue the statutory right of appeal; and *Page 9 
 "(B) Does not include inadvertence, oversight, lack of knowledge, hardship or reliance on misleading information provided by any person except an authorized tax official providing the relevant misleading information."
Plaintiffs presented no evidence for the court to determine if they had good and sufficient cause for failing to file a timely appeal.
Because of the lack of evidence, Plaintiffs' appeals of tax years 2007-08 and 2008-09 are dismissed.
 III. CONCLUSION
After careful review of the testimony and evidence, the court concludes that Plaintiffs' failed to carry their burden of proof. Plaintiffs' evidence supports Defendant's request that the subject property's real market value as of the assessment date was understated. Now, therefore,
IT IS THE DECISION OF THIS COURT that the 2009-10 real market value for Plaintiffs' property identified as Account M1373052 is $50,000; and
IT IS FUTHER DECIDED that Plaintiffs' subject property's 2007-08 and 2008-09 real market values remain as stated on the tax rolls.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron March 30, 2011. The Court filed and entered this documenton March 30, 2011.
[1] References to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to year 2007. There was no applicable statutory change between 2005 and 2007.
[2] Plaintiffs state in discussing their evidence that they "were not appraising the homes, we were only showing the general downward sales price trend with the information that the appraisers office and real estate agents provided to us." (Ptfs' Optional Comments at 2.) *Page 1